Argued and submitted January 19, affirmed September 22, 2021

In the Matter of A. R. H.,
a Youth.
STATE OF OREGON,
*Respondent,*

*v.*

A. R. H.,
*Appellant.*

Clackamas County Circuit Court
17JU01020; A172262

499 P3d 851

Youth appeals an order requiring that he report as a sex offender pursuant to ORS 163A.025. Youth contends that the juvenile court erred when it determined that he had not met his burden under ORS 163A.030(7)(b) of proving, by clear and convincing evidence, that he was rehabilitated and did not pose a safety threat to the public. *Held*: The juvenile court did not err. A reasonable juvenile court could have found itself unpersuaded that youth had made the showing required by ORS 163A.030(7)(b).

Affirmed.

Colleen F. Gilmartin, Judge.

Christa Obold Eshleman argued the cause and filed the reply brief for appellant. On the opening brief was Matthew J. Steven.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Affirmed.

Aoyagi, J., concurring.

**TOOKEY, J.**

Youth was adjudicated delinquent in relation to one count of sexual assault of an animal, and the juvenile court ordered him to serve probation. As the end of his probationary term approached, youth requested to be relieved of the obligation to report as a sex offender pursuant to ORS 163A.030. The juvenile court denied youth's request, determining that youth had "not proven, by clear and convincing evidence, that he *** is rehabilitated and does not pose a safety threat to the public." Consequently, the juvenile court ordered youth to report as a sex offender pursuant to ORS 163A.025.

Youth appeals that order. In his sole assignment of error, youth contends that the "juvenile court erred by ordering youth to register as a sex offender." For the reasons that follow, we conclude that the juvenile court did not err, and we affirm.

We describe the facts "consistently with the trial court's factual findings, reviewing for any evidence that supports those findings." *State v. A. L. M.*, 305 Or App 389, 390, 469 P3d 244, *rev den*, 367 Or 218 (2020) (internal quotation marks omitted). "Where the trial court has not made express findings, we describe the evidence consistently with the trial court's implicit findings in support of its conclusion." *Id.* (internal quotation marks omitted).

In May 2017, the juvenile court asserted jurisdiction over youth, based on conduct that, if committed by an adult, would constitute sexual assault of an animal, ORS 167.333, a Class C felony. The juvenile court placed youth on probation.

In July 2019, the juvenile court held a hearing pursuant to ORS 163A.030, which requires the juvenile court to hold "a hearing on the issue of reporting as a sex offender by a person who has been found to be within the jurisdiction of the juvenile court *** for having committed an act that if committed by an adult would constitute a felony sex crime." ORS 163A.030(1)(a). At such a hearing, "The person who is the subject of the hearing has the burden of proving

by clear and convincing evidence that the person is rehabilitated and does not pose a threat to the safety of the public." ORS 163A.030(7)(b). Under ORS 163A.030(7)(b), "If the court finds that the person has not met the burden of proof," the juvenile court must "enter an order requiring the person to report as a sex offender under ORS 163A.025."[1]

The record from the July 2019 hearing reflects that, prior to the juvenile court asserting jurisdiction over youth in May 2017, youth had sexual contact with his family's dog on multiple occasions, which was the conduct that led to the juvenile court asserting jurisdiction over youth. Police became aware of that conduct after youth reported that conduct to his parents and a school counselor. Youth's sexual contact with the family dog began when youth was 12 years old and persisted until youth was 14 years old.

The record also reflects that youth disclosed to the school counselor that he had been having "frequent sexual fantasies" regarding his mother and older sister; that, years earlier, youth had engaged in sexually inappropriate behavior involving a younger child; that youth was previously exposed to internet pornography through peers at his high school; that youth would likely be exposed to internet pornography through peers at high school in the future;[2] that youth had "struggled" with a pornography addiction; and that youth's pornography addiction had "warped his view of healthy sexuality and contributed to his deviant sexual thinking and sexual acting out behavior."

---

[1] ORS 163A.030(8) provides a nonexhaustive list of factors the juvenile court may consider in making its determination as to whether a person has proven "by clear and convincing evidence that the person is rehabilitated and does not pose a threat to the safety of the public." Those factors include, for example, the "nature of the act that subjected the person to the duty of reporting as a sex offender"; the "vulnerability of the victim"; whether "the person has participated in and satisfactorily completed a sex offender treatment program or any other intervention," and, if so, the "availability, duration and extent of the treatment activities"; the "person's academic and employment history"; the "results of psychological examinations of the person"; and the "protection afforded the public by records of sex offender registration."

[2] Youth testified that there is "a lot" of pornography at his high school, such that he feels like it is "abundant" and "everywhere"; that when he is exposed to pornography at school he "turn[s] around and walk[s] away"; and that the prevalence of pornography makes it difficult to have friendships, because sometimes "people just have things on their phone and they show it to you."

Additionally, the record from the July 2019 hearing reflects that youth, while on probation, completed an outpatient sex offender treatment program and was "fully engaged" in the program. Youth's "discharge summary" from the program reflects that "ERASOR"—which "provides an estimate of adolescence sexual recidivism risk through examining specific factors that have been linked to recidivism by existing research and professional opinion"— was "utilized to obtain an estimate of [youth's] current risk for sexual recidivism."[3] The discharge summary further reflects that, based on "the assumption that [youth] was being truthful at the time of the [ERASOR] evaluation," youth's "specific combination of presently known risk factors indicate a low risk [of sexual recidivism] at this time."

The discharge summary also notes various "risk factors" for sexual recidivism regarding youth—*viz.*, youth "sexually assaulted the same victim 2 or more times," youth had "diverse sexual-assault behaviors," youth has "negative peer associations and influences," and youth has a "high-stress family environment." The discharge summary also notes that ERASOR "has not been empirically validated."

After the July 2019 hearing, the juvenile court issued an order "find[ing]" that youth "has not proven, by clear and convincing evidence, that he *** is rehabilitated and does not pose a safety threat to the public." The order required that youth "report as a sex offender under ORS 163A.025."

As noted above, youth appeals the order requiring that he report as a sex offender, arguing that the juvenile court erred by ordering youth to "register as a sex offender." During the pendency of this appeal, we decided *A. L. M.*, 305 Or App 389. In *A. L. M.*, we explained that ORS 163A.030 "encompasses multiple legal principles"—*viz.*:

"(1) it describes the factual question before the juvenile court in a hearing under that statute—whether a youth is

---

[3] ERASOR is an acronym for "Estimated Risk for Adolescent Sexual Offense Recidivism" and "represents the risks that suggest the potential for continuing with sexually harming behavior." Janis F. Bremer, *Juveniles Who Engage in Sexually Harming Behavior-A Restorative Justice System*, 32 Wm Mitchell L Rev 1085, 1090, 1092 (2006).

rehabilitated and does not pose a public-safety threat; (2) it assigns the burden to the youth to establish those facts by clear and convincing evidence; (3) it specifies nonexclusive factors that the court may consider in making its decision; and (4) it specifies what the juvenile court must do if the youth does not meet the youth's burden—the court must require the youth to report as a sex offender."

305 Or App at 397.

We further explained that, "with respect to the juvenile court's factual findings themselves, our appellate function is limited to resolving whether there was sufficient evidence for the [juvenile] court, sitting as the trier of fact, to have made the required findings," and that we "do not substitute our judgment for that of the juvenile court, deciding whether the evidence would have satisfied us that youth was rehabilitated and did not pose a public-safety threat." *Id.* at 398 (internal quotation marks omitted). Given that standard of review, we "will disturb the juvenile court's finding that it was not persuaded that youth had met his burden of persuasion only if the record would compel *every* reasonable juvenile court to be persuaded that youth *had* met that burden." *Id.* at 399 (emphases in original).

Put another way, in considering an appeal of an order finding that a youth failed to meet the youth's burden of proof under ORS 163A.030, the question before this court is whether "*no* court could find itself unpersuaded that youth was rehabilitated and no longer presented a threat to public safety (even though other juvenile courts might have found, on the same record, that youth had been rehabilitated)." *Id.* at 404-05 (emphasis in original).

On appeal, youth argues that he is "the epitome of the rehabilitated youth for whom the legislature disallowed the state to impose registration as a sex offender under ORS 163A.030." Youth further argues that this court should "readily view" this case "'as being one of those rare cases in which the evidentiary record would compel every reasonable trial court to find that the petitioner had met his burden of persuasion.'" (Quoting *A. L. M.*, 305 Or App at 401.)

We disagree with youth. In this case, as in *A. L. M.*, we believe a reasonable juvenile court "could have found itself

unpersuaded" that youth had made the showing required by ORS 163A.030(7)(b). *A. L. M.*, 305 Or App at 404 ("[W]e ask whether *any* reasonable juvenile court could have found itself unpersuaded, on this record, that youth had established by clear and convincing evidence that he was rehabilitated and did not pose a public safety threat." (Emphasis in original.)). In that regard, we note the evidence reflecting that youth had struggled with an addiction to pornography that had contributed to his "sexual acting out behavior," and that he would likely be exposed to pornography at school in the future; that youth had demonstrated "diverse sexual-assault behaviors" in the past; and the duration of youth's conduct with regard to the dog.[4]

On this record, some juvenile courts might have determined that youth had met his burden to prove by clear and convincing evidence that he was "rehabilitated" and did "not pose a threat to the safety of the public," ORS 163A.030(7)(b), but we cannot conclude that "the record would compel *every* reasonable juvenile court to be persuaded that youth *had* met that burden." *A. L. M.*, 305 Or App at 399 (emphases in original).

In the end, we observe that the evidentiary burden imposed on youths under ORS 163A.030 is a "high" one. *A. L. M.*, 305 Or App at 398 ("Th[e] standard of review—that we review the juvenile court's factual findings only to determine whether evidence in the record supports them—applies even though the burden on youth was high, *viz.*, to establish rehabilitation and lack of a public-safety threat by clear and convincing evidence."); *see also Patterson v. Foote*, 226 Or App 104, 112, 204 P3d 97 (2009) ("The 'clear and convincing evidence' standard requires evidence of extraordinary persuasiveness—that is, evidence establishing that the truth of the facts in issue is highly probable.").

---

[4] We acknowledge that certain aspects of youth's circumstances are perhaps presently out of his control—*e.g.*, the prevalence of pornography at his high school and his "high-stress family environment."

We also note that youth may have future opportunities to seek relief from the reporting requirement. *See generally* ORS 163A.130(1), (2)(b) (setting out process for a person who was required to report as a sex offender for conduct that would constitute a Class C felony sex crime if committed by an adult to seek relief from the reporting requirement "no sooner than 30 days before the termination of juvenile court jurisdiction over the person").

We further observe that, given our standard of review as set forth in *A. L. M.*, it will perhaps be rare that we reverse a juvenile court that has determined that a youth failed to meet the youth's burden under ORS 163A.030(7)(b). But the burdens imposed on youths under ORS 163A.030, and our review of orders issued under ORS 163A.030, are a matter of legislative prerogative, and may be changed by legislative action.

Accordingly, we affirm the juvenile court's determination that youth did not met his burden of demonstrating by clear and convincing evidence that youth had been rehabilitated and does not pose a threat to the safety of the public.[5]

Affirmed.

**AOYAGI, J.,** concurring.

I agree with the majority's analysis and disposition, and I write separately only to make one observation.

As the majority acknowledges, the evidentiary burden imposed on youths under ORS 163A.030 is "high," and our standard of review means that "it will perhaps be rare" that we reverse a juvenile court's determination that such burden has not been met. 314 Or App at 678. The state was even more blunt about the situation at oral argument, describing a youth trying to meet the burden of proof in ORS 163A.030 as facing "a daunting challenge" and acknowledging that, regardless of the particular evidentiary record, it would be an "extremely rare" case in which the juvenile court would be *required* to make the necessary findings to relieve a youth from sex offender registration, given the "very high burden" imposed on youth.

In that context, it is important to recognize a practical reality of the standard in ORS 163A.030. It is always the case that different factfinders may make different findings on the same evidence, that those differences may carry

---

[5] In pressing for a different result, youth makes various arguments regarding interpretation of the phrase "rehabilitated and does not pose a threat to the safety of the public" in ORS 163A.030(7)(b). We decline to address those arguments, however, because given the record in this case, doing so would not alter the disposition.

serious consequences, and that appellate review is generally limited with respect to factfinding. Nonetheless, I do wonder whether the legislature intended findings under ORS 163A.030 to be subject to as little appellate review as they effectively are. Under ORS 163A.030(7)(b), the juvenile court's task is to determine whether a youth has proved "by clear and convincing evidence" that the youth is "rehabilitated and does not pose a threat to the safety of the public." Unlike historical factfinding, that is a *forward-looking* standard that may be especially susceptible to inconsistent outcomes.[1]

To put it directly, when it comes to whether youths will be required to embark on adulthood as registered sex offenders, the juvenile court will almost always have the final word on the matter. That may be what the legislature intended, and, in expressing concern about the possibility of inconsistent outcomes, I do not mean to suggest in any way that juvenile courts are doing anything less than their best to make the right decision in each case. I simply wish to acknowledge how little review function we actually have in these cases, lest the legislature have the misimpression that appellate review is more meaningful than it is when it comes to youth sex offender registration under ORS 163A.030.

---

[1] *Cf. State v. Langan*, 301 Or 1, 8, 718 P2d 719 (1986) (stating, in construing a particular statute, that, "[a]part from the implausible assumption that a judge actually might deny an order setting aside a conviction after finding that the facts warranted the order, we doubt that the legislature meant the [disputed text] to describe 'circumstances and behavior' so loosely that two different judges would have 'discretion' to take opposite actions on identical facts").