82 May 25, 2023 No. 13

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

A. R. H.,
*Petitioner on Review.*

(CC 17JU01020) (CA A172262) (SC S069077)

On review from the Court of Appeals.*

Argued and submitted September 22, 2022.

Christa Obold Eshleman, Youth, Rights & Justice, Portland, argued the cause and filed the briefs for petitioner on review.

Patricia G. Rincon, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Danny Newman, Tonkon Torp LLP, Portland, filed the brief for *amici curiae* Elizabeth J. Letourneau, Ryan Shields, Michael F. Caldwell, and Rebecca L. Fix. Also on the brief was Jon P. Stride, Portland, and Lisa B. Swaminathan, Ballard Spahr, LLP, Philadelphia.

Garrett Garfield, Holland & Knight LLP, Portland, filed the brief for *amici curiae* Juvenile Law Center, National Juvenile Defender Center (N/K/A The Gault Center), and Oregon Justice Resource Center. Also on the brief was Marsha Levick, Juvenile Law Center, Philadelphia.

Before Flynn, Chief Justice, Duncan, Garrett, DeHoog, and James, Justices, and Balmer and Walters, Senior Judges, Justices pro tempore.**

_____

* Appeal from Clackamas County Circuit Court, Colleen F. Gilmartin, Judge. 314 Or App 672, 499 P3d 851 (2021).

** Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case. Bushong, J., did not participate in the consideration or decision of this case.

FLYNN, C. J.

The decision of the Court of Appeals and the order of the circuit court are affirmed.

**FLYNN, C. J.**

Youth in this juvenile delinquency case challenges an order of the juvenile court that directs him to report as a sex offender. At issue is the meaning and application of ORS 163A.030, which applies when a person has been found to be within the jurisdiction of the juvenile court for having committed an act that would constitute a felony sex crime if committed by an adult and which specifies a process that a juvenile court must follow before ordering the person to comply with the sex offender reporting requirement.[1] That statute directs the juvenile court to conduct a hearing at which the youth bears the "burden of proving by clear and convincing evidence" that the youth "is rehabilitated and does not pose a threat to the safety of the public." ORS 163A.030(1)(a), (7)(b). And, "[i]f the court finds that the [youth] has *not* met" that burden, then "the court shall enter an order requiring the [youth] to report as a sex offender." ORS 163A.030(7)(b) (emphasis added).

As we will explain, we conclude that the inquiry assigned to the juvenile court—whether the evidence is clear and convincing that the youth "is rehabilitated and does not pose a threat to the safety of the public," ORS 163A.030(7)(b)—is a factual inquiry. Further, the juvenile court's answer to that inquiry is one that an appellate court reviews in the same way that it reviews factual findings in general: We ask whether the evidence in the record, together with all reasonable, nonspeculative inferences that the factfinder could have drawn from the evidence, permitted the court's finding or, conversely, required a different finding. Viewing the evidence presented in this case in that light, we conclude that the record permitted the juvenile court to find that youth failed to prove by clear and convincing evidence that he was "rehabilitated" and not "a threat to the safety of the public." Accordingly, we affirm that court's order, as

---

[1] Juvenile court jurisdiction extends to "any case involving a person who is under 18 years of age and who has committed an act that is a violation, or that if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city." ORS 419C.005. Although ORS 163A.030 uses the term "person," rather than "youth" or "adjudicated youth," for ease of reading we will use the term "youth" throughout this opinion. *See* ORS 419A.004(1) ("[a]djudicated youth" means a person found to be within the juvenile court's jurisdiction, for an act committed when under 18 years of age).

well as the underlying Court of Appeals decision, which also affirmed that order. *State v. A. R. H.*, 314 Or App 672, 499 P3d 851 (2021).[2]

## I.  BACKGROUND

Youth came to the attention of his county's juvenile department when he was 14 years old, after he disclosed to his mother, his sister, and a school counselor that he had engaged in sexual conduct with the family's dog. Youth's school counselor reported youth's disclosure to law enforcement, and the department later filed a delinquency petition alleging that youth was within the court's jurisdiction for conduct that would constitute sexual assault of an animal (ORS 167.333) if committed by an adult. Youth admitted to having committed one count of the alleged conduct, and youth's attorney arranged for youth to undergo a psychosexual assessment. The provider who conducted that assessment concluded that youth presented a "low to moderate risk" of reoffending and recommended that youth complete outpatient sex offender treatment focusing on family therapy, healthy sexuality, and empathy.

Youth's probation officer later reviewed youth's psychosexual assessment and recommended that youth serve probation and complete outpatient sex offender treatment while continuing to live at home. The juvenile court accepted those recommendations and imposed a term of probation with numerous conditions that included completing a "sexual offense specific treatment program." Youth then participated in and completed the recommended treatment program through "Lifeguards" with counselor Stanzione, during which youth disclosed that he had sexually abused the dog on multiple occasions and that he had watched pornography on a daily basis between the ages of 12 and 14.

After youth had completed the recommended treatment, the juvenile court held the hearing that ORS 163A.030 prescribes. Youth's evidence included Stanzione's written treatment notes, which explained that youth's pornography use had "warped his view of healthy sexuality

---

[2] We also reject a constitutional challenge that youth raises by concluding that ORS 163A.030(7)(b) is not unconstitutionally vague.

and contributed to his deviant sexual thinking and sexual acting out behavior." But Stanzione reported that, "[d]uring treatment, [youth] learned about healthy sexuality, healthy fantasies, boundaries, the impact of pornography, healthy relationships, managing urges, and the impact of sexual[ly] abusive behavior." Stanzione also reported that youth had "shown growth in several areas[,] including having healthy fantasies, controlling sexual urges, and understanding objectification of women"; that he had "continued to make progress"; and that he had "demonstrated internalization of the skills he ha[d] been developing in treatment."

In youth's discharge summary, Stanzione assessed youth's risk of sexual recidivism using the Estimate of Risk of Adolescent Sexual Offense Recidivism (ERASOR). Stanzione explained that ERASOR "has not been empirically validated," but that it "provides an estimate of adolescence sexual recidivism risk through examining specific factors that have been linked to recidivism by existing research and professional opinion." He further explained that administration of ERASOR "is based in an assumption that the client was being truthful at the time of the evaluation," and he acknowledged that "ERASOR does not provide specific guidelines for assigning risk level." Stanzione reported that the ERASOR assessment indicated that youth presented a "low risk" of sexual recidivism based on youth's "specific combination of presently known factors" in the five evaluated areas. Following an explanation of the ERASOR factors, Stanzione opined that, "[o]verall, [youth had] made significant progress and ha[d] made changes which have further reduced his risk of reoffending in the future."

Stanzione also wrote to youth's attorney, in which he reported that youth had "fully engaged in the treatment process from the beginning and took ownership for his offenses and the other risky behavior he had engaged in." He reiterated the conclusion of the ERASOR assessment, "as mentioned in the discharge summary," that youth "was a low risk to reoffend." Stanzione further explained that youth had "express[ed] the desire to learn and [had] asked pertinent questions throughout our meetings in order to gain further understanding." And Stanzione noted that youth had participated in a process in which he had "discuss[ed] what

he learned in treatment, and how he will prevent future acting out behavior."

Youth submitted all the evidence described above to support his assertion that he should not be required to report as a sex offender. Youth also testified at the hearing about his offense and his treatment with Stanzione. He testified that he had disclosed his offense because he had felt embarrassed and ashamed about his conduct. He explained that, during his sex offender treatment, he had learned about "thought stopping tools" and had learned "how to prevent" himself from reoffending. He further explained that through his treatment he had learned how his conduct had affected him and how it had affected his family. Youth also testified that he "used to watch a lot of sexual things," but that he had stopped watching pornography because it had led him to offend. He acknowledged that students at his school watched pornography on their phones and that "they show it to you." But he explained that, when other students show him pornography, he "turn[s] around and walk[s] away."

Youth's probation officer, Kingsbury, also testified at the hearing. He reported that youth had completed all the probation requirements that the court had imposed and explained that youth had not had problems with his safety plan, that youth had never received a probation violation, and that youth's family had been supportive and had provided appropriate supervision. Kingsbury also explained that he had not had concerns about youth using pornography during youth's term of probation and that youth had worked on issues related to pornography use and found "ways to manage that" and become "knowledgeable about how that can kind of trigger some other issues for him." And Kingsbury reported that he would be recommending that youth be released from probation.

The state offered no evidence of its own and did not dispute youth's assertion that he was rehabilitated and did not pose a threat to the safety of the public. Instead, the state took the position that it would "leave this decision to the sound discretion of the court." The juvenile court took the question under advisement without making any findings on

the record and, six weeks later issued a form order on which it checked the box for the following statement: "The youth has not proven, by clear and convincing evidence, that he or she is rehabilitated and does not pose a safety threat to the public."

Youth appealed, arguing that he had proved as a matter of law that he was rehabilitated and did not pose a threat to the safety of the public. The Court of Appeals disagreed and affirmed in a written decision. *A. R. H.*, 314 Or App 672. That court explained that the question assigned to the juvenile court under ORS 163A.030(7)(b)—whether the youth "is rehabilitated and does not pose a threat to the safety of the public"—is a factual question for which the youth bears the burden of proof by clear and convincing evidence. *Id.* at 675-76. In affirming the juvenile court's finding that youth had not met that burden, the Court of Appeals referred to evidence in the record, including "that youth had struggled with an addiction to pornography that had contributed to his 'sexual acting out behavior,' and that he would likely be exposed to pornography at school in the future"; and that youth's sexual contact with the family dog had spanned a period of more than a year. *Id.* at 676-77.

We allowed youth's petition for review, and we also affirm. As we will explain, we conclude that the record did not require the juvenile court to find that youth had proved by clear and convincing evidence that he was rehabilitated and did not pose a threat to the safety of the public. But we caution that the relevant factual inquiry under ORS 163A.030 is focused on the youth's status at the time of the hearing. Thus, a youth's pre-adjudication conduct alone will not necessarily permit a finding that the youth has failed to prove by clear and convincing evidence that the youth is rehabilitated and not a threat to the safety of the public.

## II.  ANALYSIS

By way of background, ORS 163A.025 generally requires a youth who has been found within the jurisdiction of the juvenile court for having committed an act that, if committed by an adult, would constitute a felony sex crime, to report as a sex offender. However, ORS 163A.030 requires the court to conduct a hearing on that question

and establishes a framework for the juvenile court to determine whether the youth will be required to report as a sex offender.[3] Paragraph (1)(a) of that statute requires the court to hold a hearing on that question, so long as several circumstances are met (none of which are at issue here). Subsection (7) then provides, in part:

> "At the hearing described in subsection (1) of this section:
>
> "* * * * *
>
> "(b)   The person who is the subject of the hearing has the burden of proving by clear and convincing evidence that the person is rehabilitated and does not pose a threat to the safety of the public. If the court finds that the person has not met the burden of proof, the court shall enter an order requiring the person to report as a sex offender under ORS 163A.025."

The parties dispute whether the juvenile court erred when it entered the order that directed youth to report as a sex offender. Our resolution of that dispute turns on additional questions about the nature of youth's evidentiary burden under ORS 163A.030(7)(b) and the appropriate standard of review. Because those disputes present questions of statutory construction, we resolve them by employing our well-established analytical framework, as set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, we examine the text and context of ORS 163A.030, and we consider legislative history to the extent that it aids our analysis—all with the goal of determining the intent of the legislature. *Gaines*, 346 Or at 171-72.

A.  *The Nature of the Juvenile Court's Inquiry*

The first dispute that we must resolve is the nature of the determination that the legislature has assigned to the juvenile court—whether a youth has proved by clear

---

[3] ORS 163A.030 has been amended twice since the juvenile court's hearing, but not in ways that impact our analysis. *See* ORS 163A.030(10)(a)(A) (2019), *amended by* Or Laws 2019, ch 68, § 13; ORS 163A.030(4)(a) (2019), *amended by* Or Laws 2021, ch 597, § 33.

and convincing evidence that the youth is "rehabilitated and does not pose a threat to the safety of the public." ORS 163A.030(7)(b). That dispute is significant, because our standard of review depends on whether the determination is legal or factual in character. *See M. A. B. v. Buell*, 366 Or 553, 564, 466 P3d 949 (2020) (explaining that appellate courts review a trial court's resolution of a question of law for legal error, but review a trial court's findings of fact for whether any evidence in the record supports the finding). According to youth, the statute calls upon the juvenile court to make a legal determination that an appellate court then reviews to determine whether the juvenile court reached the correct conclusion. The state disagrees, arguing that ORS 163A.030(7)(b) imposes a factfinding role on the juvenile court, such that the question for the court on appeal is whether any evidence in the record supports the juvenile court's finding. As explained below, we agree with the state.

The text of ORS 163A.030(7)(b) indicates that the legislature intended the juvenile court's determination to be factual. That statute provides that the youth has the burden of proving that they are "rehabilitated" and that they do "not pose a threat to the safety of the public." That paragraph further provides that, when "the court *finds* that the [youth] has not met the burden of proof, the court shall enter an order requiring the [youth] to report as a sex offender." *Id.* (emphasis added). As we have explained, in the legal context, "to find" generally refers to a trial court's factual determinations. *See Arvidson v. Liberty Northwest Ins. Corp.*, 366 Or 693, 709, 467 P3d 741 (2020) (explaining that, in "legal proceedings, the phrase 'to find' is often, perhaps predominantly, used to refer to a specific type of determination by a tribunal: a resolution of *factual* disputes" (emphasis in original)); *see also Black's Law Dictionary* 749 (11th ed 2019) (defining "find" as "[t]o determine a fact in dispute by verdict or decision"); Bryan A. Garner, *A Dictionary of Modern Legal Usage* 358 (2d ed 1995) (explaining that the "court properly makes *findings of fact* and *holdings* or *conclusions of law*" (emphases in original)). Moreover, a juvenile court's prediction of whether a youth poses a "threat to the safety of the public" is the kind of determination that, in other contexts, we have understood to be a question of fact. *See M. A. B.*,

366 Or at 565 (in appeal from issuance of restraining order, reviewing as a factual finding "whether the evidentiary record is capable of supporting the trial court's inference that respondent was reasonably likely to abuse petitioner in the near future"). And nothing in the text of the statute persuades us that the legislature, notwithstanding its use of the word "finds," intended the juvenile court's finding to be reviewed for legal error.

Youth emphasizes the statutory phrase "burden of proof," to support his argument that the inquiry under ORS 163A.030(7)(b) involves a legal determination. He cites *Delgado v. Souders*, 334 Or 122, 46 P3d 729 (2002), and asserts that "whether a party has met its burden of proof on an element is a question of law." Youth is correct that, when the party with the burden of proof has prevailed below, an appellate court's task on review is to "determine whether [the party] presented enough evidence, as a matter of law, to permit reasonable persons to conclude that the evidence established each element." *Id*. at 134-35. But youth did not prevail below, and so—regardless of the nature of the trial court's inquiry—the standard that he cites is inapplicable. More to the point here, however, ORS 163A.030(7)(b) is not phrased in such a way that would direct the juvenile court, in the first instance, to determine whether the youth's evidence "would permit reasonable persons to find" that the youth is rehabilitated and does not pose a threat to the safety of the public. By contrast, the statute expressly directs the juvenile court to make that finding itself. The reference to "burden of proof" in ORS 163A.030(7)(b) must be understood in the context of the full text of that paragraph, which expressly identifies that burden in terms of the precise finding that the juvenile court must make.

In sum, read as a whole, we understand the juvenile court's determination under ORS 163A.030(7)(b) to be a "finding" that the court is or is not persuaded "that the [youth] is rehabilitated and does not pose a threat to the safety of the public." *See State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003) (emphasizing that "a trial court's acceptance or rejection of evidence" is a "finding" that this court reviews under the same standard that it reviews any other finding).

B.    *The Nature of Youth's Burden*

We next consider what it means for a youth to prove "by clear and convincing evidence that the [youth] is rehabilitated and does not pose a threat to the safety of the public."[4] ORS 163A.030(7)(b). The "clear and convincing evidence" standard is a familiar one that courts are directed to apply in a variety of statutory contexts. *See, e.g.*, ORS 419B.521(1) (termination of parental rights must be based on facts "established by clear and convincing evidence"); ORS 426.130 (1)(a)(C) ("clear and convincing evidence" required to civilly commit "a person with mental illness"); ORS 31.730(1) (factual basis for award of punitive damages must be "proven by clear and convincing evidence"). As we have explained, under the "clear and convincing evidence" standard, "the proponent must establish that the facts asserted are highly probable." *State v. Pittman*, 367 Or 498, 530, 479 P3d 1028 (2021) (internal quotation marks omitted).

We also have observed that it can be helpful to phrase the factfinder's inquiry into whether a fact is "highly probable" as "whether one interpretation of the evidence is 'much more probably' true than alternative interpretations." *Willbanks v. Goodwin*, 300 Or 181, 190, 709 P2d 213 (1985) (referring to Edmund M. Morgan, *Instructing the Jury Upon Presumptions and Burdens of Proof*, 47 Harv L Rev 59, 66-67 (1933)). That standard is in contrast to the higher standard of proof "beyond a reasonable doubt," which means the proponent must establish that the facts asserted are "'almost certainly true.'" *Pittman*, 367 Or at 531 (quoting *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 402, 737 P2d 595 (1987)). It also stands in contrast to the lower standard

---

[4] The legislature's use of the conjunction "and" to join the two required showings set out in ORS 163A.030(7)(b) could suggest that it intended rehabilitation and threat to be distinct concepts and separate showings that the youth is required to prove, or it could suggest that the legislature used both seemingly similar concepts for the sake of emphasis. *See State v. Cloutier*, 351 Or 68, 97, 261 P3d 1234 (2011) (explaining that "the fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal"); *see also Wittemyer v. City of Portland*, 361 Or 854, 864, 402 P3d 702 (2017) (explaining that "[l]egal terminology often employs synonyms, 'sometimes for clarity, sometimes for emphasis'" (quoting *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 397, 737 P2d 595 (1987))). We need not resolve that theoretical question here, because it makes no difference to our analysis of the record in this case.

of proof by a preponderance of the evidence, which requires only that the fact asserted is more probably true than not. *Id.* at 530. Accordingly, at a hearing under ORS 163A.030, the youth bears the burden of proving that it is "highly probable," or "much more probably true" than not, that the youth is "rehabilitated and does not pose a threat to the safety of the public."

We turn next to what the legislature intended by the terms "rehabilitated" and "threat to the safety of the public." ORS 163A.030(7)(b). Youth argues that the legislature intended those terms to have their ordinary meaning, which in this context means that, "as a result of a process of change, the youth does not show indications of likelihood to reoffend sexually in the future." The state proposes a similar meaning to describe the standard—that youth had the burden of demonstrating "that he completed treatment or other ameliorative services and is unlikely to reoffend." As we will explain, we agree that the legislature intended its stated standard of "rehabilitated and does not pose a threat to the safety of the public" to have the ordinary meaning that the parties propose.

ORS 163A.030 does not define "rehabilitated" or "threat." Because those are terms of common usage, however, we assume that the legislature intended them to have their "plain, natural, and ordinary meaning." *DCBS v. Muliro*, 359 Or 736, 746, 380 P3d 270 (2016) (internal quotation marks omitted). "Rehabilitate" commonly refers to the act or process, including through therapeutic treatment, of restoring an individual to a useful and constructive place in society. *See Webster's Third New Int'l Dictionary* 1914 (unabridged ed 2002) (defining "rehabilitate" as "to restore (as a delinquent) by a formal act or declaration to a former right, rank, or privilege lost or forfeited"; "to put on a proper basis or into a previous good state," including by "restor[ing] to a useful and constructive place in society through social rehabilitation"); *see also id.* (defining "rehabilitation" as "the process of restoring an individual (as a convict * * *) to a useful and constructive place in society through some form of * * * therapeutic retraining or through relief"); *Black's* at 1476 (defining "rehabilitation" as "[t]he process

of seeking to improve a criminal's character and outlook so that [they] can function in society without committing other crimes").

In common usage, something is a "threat" if it is a source of impending harm. *See Webster's* at 2382 (defining "threat" as "an indication of something impending and usu[ally] undesirable or unpleasant"; "something that by its very nature or relation to another threatens the welfare of the latter"). In *State v. Hall*, 327 Or 568, 573, 966 P2d 208 (1998), we examined the common meaning of the term "threat" in the context of construing a statute that used the term "threaten." We quoted *Webster's* definition of "threat" and explained that "a threat can be *explicit* (an expression of an intention to inflict harm or loss on another) or *implicit* (something that by its nature or relation to another announces that a person's welfare is in danger)." *Id*. (emphases in original). Given the legislature's focus on whether a particular youth "pose[s] a threat" to the safety of the public, it appears to have contemplated the implicit, or "by its very nature or relation to another" meaning of "threat."

The next question may be, "threat of what?" Although ORS 163A.030(7)(b) does not expressly answer that question, the legislative history makes clear that the "threat to the safety of the public" with which the legislature was concerned was the threat that the youth will commit future sex offenses (or acts that would constitute a sex offense if committed by an adult). When the legislature considered changes to the reporting requirements for juveniles, the testimony regarding the proposed changes focused on the threat of youths committing future sex offenses, rather than a wider variety of generic threats. *See generally* Audio Recording, House Committee on Judiciary, HB 2902, Feb 26, 2015, at 13:23, 27:10, 41:59, 58:45 (testimony of witnesses discussing the likelihood of youths committing future sex offenses and the efficacy of rehabilitative treatment in reducing recidivism rates), https://olis.oregonlegislature.gov (accessed Feb 8, 2023); *see also* Exhibit 7, House Committee on Judiciary, HB 2902, Feb 26, 2015 (statement of Mark McKechnie, Executive Director of Youth, Rights & Justice,

entitled "Comparing Rates of Future Sexual Offenses Between Juvenile Offender Types").[5]

And the proponents of the proposed changes to the reporting requirements for juveniles made clear their understanding that requiring an individualized "threat" inquiry would "retain registration only for those juvenile offenders who continue to be considered at relatively high risk to commit new sex crimes." Exhibit 4, House Committee on Judiciary, HB 2902, Feb 26, 2015 (City Club of Portland Bulletin, Vol 97, No 8, Nov 5, 2014 "Oregon's Sex Offender Registry: How to Handle Juvenile Offenders") (City Club Report); s*ee also* Audio Recording, Joint Committee on Ways and Means, Subcommittee on Public Safety, HB 2320, June 22, 2015, at 7:39 (comments of Mark McKechnie) (describing the final bill as reflecting a "good compromise," with "some youth who are considered low risk being able to avoid registration in the future, but still setting a fairly high bar before they can avoid that requirement").

In sum, we conclude that whether a youth must report as a sex offender under ORS 163A.030 depends on a factual inquiry. The youth bears the burden to prove that it is highly probable that they have undergone a process of rehabilitation and do not present a risk of committing future sex offenses. We further conclude that the juvenile court may order the youth to report as a sex offender only when it finds that those asserted facts are not highly probable.

C.  *The Task of the Reviewing Court*

As noted at the outset, the foregoing statutory construction of ORS 163A.030(7)(b) in turn informs our standard of review: Our conclusion that the juvenile court makes a factual finding when it determines whether a youth has proved that it is highly probable the youth is "rehabilitated

---

[5] The 2015 amendments to Oregon's juvenile sex offender reporting statutes that we analyze here—including the process to determine whether a youth will be required to report—began as House Bill (HB) 2902 (2015), but the House Committee on Judiciary later moved the content of the proposal to HB 2320 (2015), with the understanding that the amendment to HB 2320 "incorporate[d] the policy issues discussed" in the Committee during the hearing on HB 2902. Staff Measure Summary, House Committee on Judiciary, HB 2320 A, Apr 20, 2015.

and not a threat to the safety of the public" means that we review for whether there is "any evidence in the record to support" that finding.[6] *M. A. B.*, 366 Or at 564; *see also Botofan-Miller and Miller*, 365 Or 504, 505-06, 446 P3d 1280 (2019) ("we will uphold the trial court's findings of facts if there is any evidence in the record to support them"). And, in reviewing the record, "we accept reasonable inferences and reasonable credibility choices that the trial court could have made." *Botofan-Miller*, 365 Or at 505-06. When, as here, the factfinder determines that it is not persuaded to find in favor of the party with the burden of proof, we review that "finding" under the same standard by which we review findings, generally. *See Johnson*, 335 Or at 523 (explaining that the court applies the same standard of review when "a trial court's 'finding' [is] that a party's evidence is not sufficiently persuasive"). Thus, whether the juvenile court finds that a youth has proved—or not proved—by clear and convincing evidence that the youth is rehabilitated and not a threat to the safety of the public, the reviewing court accepts that finding unless the record required the juvenile court to answer that factual question in a different way. *See id.* (reviewing court will accept findings unless "the trial court as finder of fact could decide a particular factual question in only one way"); *see also State v. Aguirre-Rodriguez*, 367 Or 614, 623, 482 P3d 62 (2021) ("[w]here the evidence gives rise to multiple reasonable inferences, the choice between those inferences—so long as those inferences are reasonable—is a matter for the factfinder").

Youth proposes, however, that some inferences are inherently more reasonable for a juvenile court to draw. According to youth, post-adjudication circumstances, such as a youth's successful completion of sex offender treatment and the opinions of treatment professionals, should "weigh heavily" in favor of a finding that the youth "is rehabilitated and does not pose a threat to the safety of the public." In support of that rule, youth cites a substantial body

---

[6] In an appeal from a judgment of the juvenile court such as this, the Court of Appeals has discretion to "try the cause anew upon the record or make one or more factual findings anew upon the record." ORS 19.415(3)(b) (allowing for *de novo* review of equitable actions or proceedings at the appellate court's discretion). The Court of Appeals did not conduct *de novo* review of the record in this case, and neither do we.

of scientific research suggesting that juveniles who have engaged in sexual misconduct are amenable to treatment, and he argues that legislative history demonstrates the legislature's intent that reporting determinations under ORS 163A.030 will "follow the science" and "apply the best research available." Thus, youth insists, it "is not reasonable for a court to make a decision about risk of reoffending that rejects both the well-established science about the statistically very low risk of sexual reoffending by all adjudicated youth, and the professional process of rehabilitation that a particular youth has completed," as well as "well-founded professional opinion about the significance of factors such as a youth's maturation and desistance from offense behavior." As explained below, we disagree that successful completion of sex offender treatment must be given greater weight in determining whether youth is rehabilitated and does not pose a threat to the safety of the public, because neither the text nor legislative history of ORS 163A.030 support youth's argument.

Notably, ORS 163A.030(8) sets out an extensive list of both pre-adjudication and post-adjudication factors that the juvenile court "may consider but need not be limited to considering" when determining whether the youth "is rehabilitated and does not pose a threat to the safety of the public." Some of those factors describe circumstances and potential circumstances related to the conduct for which the youth was adjudicated (*i.e.*, "physical or emotional injury to the victim," the "nature of the act," whether the youth "used or threatened to use force," whether "the act was premeditated," whether the youth "took advantage of a position of authority or trust in committing the act," the age of and "vulnerability of the victim," the number of victims, and "the age difference between any victim" and the youth). ORS 163A.030(8)(a)-(g).

Other factors set out in ORS 163A.030(8) identify circumstances related to the youth's post-adjudication efforts and attitudes (*i.e.*, the youth's "willingness to accept personal responsibility for the act and personal accountability for the consequences of the act"; the youth's "efforts to mitigate the effects of the act"; including by paying for the victim's counseling, whether the youth "participated in and

satisfactorily completed a sex offender treatment program"; and the youth's "compliance with and success in completing the terms of supervision"). ORS 163A.030(8)(j)-(L), (p). And, if the youth did "participate[] in and satisfactorily complete[] sex offender treatment," ORS 163A.030(8)(L) further provides that the court may consider the "availability, duration, and extent of the treatment activities"; "[r]eports and recommendations from the providers of the treatment"; "[t]he [youth's] compliance with court, board or supervision requirements regarding treatment"; and "[t]he quality and thoroughness of the treatment program."

Still other factors set out in ORS 163A.030(8) identify potential circumstances that relate to the youth's conduct both pre- and post-adjudication (*i.e.*, other acts "that would be crimes if committed by an adult," "academic and employment history," "use of drugs or alcohol," "history of public or private indecency," the "results of psychological examinations," and the "protection afforded the public by records of sex offender registration"). ORS 163A.030(8)(h), (m)-(o), (q), (r). And, finally, the statute specifies that the juvenile court may consider "[a]ny other relevant factors."[7] ORS 163A.030(8)(s).

Nothing in the text of ORS 163A.030(8) accommodates youth's proposition that the juvenile court always must give greater weight to those circumstances that relate to the youth's post-adjudication efforts and attitudes. Instead, the legislature explicitly provided that the juvenile court "need not be limited to considering" the enumerated factors, ORS 163A.030(8), and ultimately may consider "[a]ny other relevant factors," ORS 163A.030(8)(s), in making its factual determination whether a particular youth is rehabilitated and no longer a threat to the safety of the public. In other words, the statute indicates that the legislature intended that the juvenile court would make an individualized inquiry for each youth, with no particular factors entitled to greater weight. Accordingly, youth's argument that successful completion of sex offender treatment should be given "particular weight" in determining whether he is rehabilitated and does not pose

---

[7] The statute also specifically lists one factor that does not directly relate to the youth (*i.e.*, "[s]tatements, documents and recommendations by or on behalf of the victim or the parents of the victim"). ORS 163A.030(8)(i).

a threat to the safety of the public is belied by the plain text of the statute, which assigns the burden of proof to youth and permits the juvenile court to weigh youth's successful completion of treatment with a variety of other factors.

Youth's argument is similarly unsupported by the legislative history. Proponents of the 2015 legislation that created the current process for determining whether a youth will be required to report as a sex offender included the City Club of Portland, which had undertaken an extensive study of the juvenile sex offender registration and submitted its conclusions in a report to the legislature. That report indicated that a youth who has been adjudicated for a sex offense and later completes sex offender treatment is statistically unlikely to reoffend. *See* City Club Report at 28 (explaining that the authors expected that "only a small minority of offenders" would present a "high risk" of reoffending at the end of their period of supervision). Similarly, other proponents testified that the risk of sexual recidivism for youth is low, especially when they have completed sex offender treatment. *See, e.g.*, Testimony, House Committee on Judiciary, HB 2902, Feb 26, 2015, (testimony of Mark McKechnie, citing research and providing that "[t]he rates of re-offense (measured by arrests, charges or convictions) for juvenile sex offenses are very low across the [United States], whether youth are required to register or not"); Audio Recording, House Committee on Judiciary, HB 2902, Feb 26, 2015, at 27:10 (comments of attorney David Rabinno), https://olis.oregonlegislature.gov (accessed Feb 8, 2023) (testifying that the research indicates that "the recidivism rate [for youth] is extremely low" when the youth has completed sex offender treatment); *id*. at 59:18 (testimony of Oregon Youth Authority parole and probation supervisor Debbi Martin) (citing research indicating that "rehabilitative efforts with most youth are effective and that therapeutic interventions rather than social control strategies are likely to not only be more successful but cost effective as well").

The Oregon District Attorneys Association (ODAA) opposed House Bill (HB) 2902, however, based in part on its assertion that "there are no true actuarial risk assessment tools" for determining the risk of sexual recidivism for youth offenders. Audio Recording, House Committee on

Judiciary, HB 2902, Feb 26, 2015, at 1:03:55 (comments of Jeff Howes), https://olis.oregonlegislature.gov (accessed Feb 8, 2023). The ODAA's objections led to negotiations with the bill's proponents, and the parties reached a compromise that was reflected in proposed amendments that the legislature later enacted. Or Laws 2015, ch 820, § 31; *see also* Audio Recording, Joint Committee on Ways and Means, Subcommittee on Public Safety, HB 2320, June 22, 2015, at 7:39 (statement of Mark McKechnie describing the final bill as a "compromise" between proponents and ODAA).[8]

Those negotiated amendments changed the standard of proof from a preponderance of the evidence to clear and convincing evidence, shifted the burden of proof from the state to the youth, and added the 18 enumerated factors that the juvenile court "may consider but need not be limited to considering." ORS 163A.030(8). *Compare* HB 2902, *with* Or Laws 2015, ch 820, § 31.[9] In short, the legislature approved a compromise bill that did not provide a presumption in favor of relief for a youth—whether or not that youth had completed sex offender treatment—despite being presented with a substantial body of research that indicated that such a youth is unlikely to reoffend.[10] Accordingly, we reject youth's argument that successful completion of sex offender treatment should be given "particular weight" in determining whether the youth is rehabilitated and poses a threat to the safety of the public, because the plain text of the statute and its legislative history contradict that argument.

---

[8] As noted earlier, the 2015 legislation began as HB 2902 but later was enacted as HB 2320.

[9] HB 2902 as introduced provided that "[t]he juvenile court shall enter an order requiring the person to report as a sex offender *** if the court finds by a preponderance of the evidence that the reporting is necessary for the safety of the public and prevention of future sex offenses by the person." In contrast, Oregon Laws 2015, chapter 820, section 31 required the youth to prove "by clear and convincing evidence that [they are] rehabilitated and do[] not pose a threat to the safety of the public."

[10] Both Judge Aoyagi, concurring in this case, *A. R. H.*, 314 Or App at 678 (Aoyagi, J., concurring), and Judge Egan, concurring in a subsequent case, *State v. J. J. L.*, 323 Or App 136 (2022) (nonprecedential memorandum opinion) (Egan, J., concurring) have highlighted the significant obstacle and potentially negative consequences of the proof requirements under ORS 163A.030. As those judges recognized, however, altering the youth's burden of proof is a matter for the legislature, not the appellate courts.

D.   *The Constitutionality of ORS 163A.030(7)(b)*

  Lastly, youth argues that the Court of Appeals' construction of ORS 163A.030 renders the statute unconstitutionally vague under both the state and federal constitutions. Specifically, he argues that ORS 163A.030 violates Article I, section 20, of the Oregon Constitution because "[n]either the juvenile court nor the Court of Appeals articulated any 'rational explanation' for denying relief to [youth] that is 'reasonably related to [his] individual situation.'" Similarly, he argues that ORS 163A.030 violated his right to Due Process under the Fourteenth Amendment to the United States Constitution because the Court of Appeals' "construction renders it impossible for an ordinary adult (much less a youth) to understand what they must do to avoid registration." As explained below, we disagree that ORS 163A.030 violates the identified constitutional provisions.

  Article I, section 20, provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." When interpreting that constitutional provision, we have explained that a "statute is unconstitutionally vague if it gives the police, the prosecutor, or the court, uncontrolled or unbridled discretion to punish defendants or to decide what is prohibited, or fails to inform persons subject to it of what conduct on their part will render them liable." *State v. Rogers*, 352 Or 510, 527, 288 P3d 544 (2012); *see also id*. at 528 (explaining that "[v]agueness concerns typically arise when a statute contains terms that are so indeterminate or standardless that they leave questions about its application to the ad hoc judgments of judge, jury, or police").

  We disagree with youth that ORS 163A.030(7)(b) is "so indeterminate or standardless" that it "leave[s] questions about its application to the ad hoc judgments" of the juvenile court. Rather, the statute clearly sets out what a youth must prove and what the juvenile court must find—that the youth is rehabilitated and does not pose a threat to the safety of the public, by clear and convincing evidence. Those terms have well-established meanings that we have detailed above. And our standard of review makes the

court's findings subject to the same degree of scrutiny on review as any other factual findings. Although we recognize "that different factfinders may make different findings on the same evidence," *A. R. H.*, 314 Or App at 678 (Aoyagi, J., concurring), that does not mean that ORS 163A.030 (7)(b) leaves the decision to the ad hoc judgment of the court that is making the finding. *See State v. Illig-Renn*, 341 Or 228, 240, 142 P3d 62 (2006) (reasoning that the term "lawful order" as an element of a criminal offense left nothing to "ad hoc judgment" because it "invokes ascertainable standards from an outside source").

We are similarly unpersuaded that ORS 163A.030 (7)(b) is unconstitutionally vague under the federal constitution. The Due Process Clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." Under that clause, a statute is unconstitutionally vague when it "contains no identifiable standard"; "employs a standard that relies on the shifting and subjective judgments of the persons who are charged with enforcing it"; or it "fails to provide fair warning." *Illig-Renn*, 341 Or at 240-41 (internal citations omitted). For similar reasons as articulated with respect to Article I, section 20, we conclude that ORS 163A.030 does not rely on "the shifting and subjective judgments" of the juvenile court and does not "fail[] to provide a fair warning." Instead, it provides that youth has the burden of proving, by clear and convincing evidence, that he is rehabilitated and does not pose a threat to the safety of the public and provides 18 enumerated factors that the juvenile court may consider in making its determination. Accordingly, ORS 163A.030 is not unconstitutionally vague.

E. *The juvenile court permissibly found that youth had not met his burden.*

As we have explained, our task on review is to determine whether the only finding permitted by this record is that youth had proved that it was highly probable he had been rehabilitated and did not present a risk of committing future sex offenses—and, thus, that he should not be required to report as a sex offender. *See Johnson*, 335 Or at 523 (explaining that this court accepts a trial court's

evaluation of the evidence unless "the trial court as finder of fact could decide a particular factual question in only one way"). The state points to factors that—it contends—permitted the juvenile court to find that youth's evidence was not sufficiently persuasive. Those factors include youth's admissions that he had had repeated sexual contact with the family dog and that youth had engaged in—what the state describes as—conduct "indicating inappropriate sexual boundaries." The state also refers to evidence that "youth had an unhealthy preoccupation with pornography, which had contributed significantly to his inappropriate sexual conduct," and that he had acknowledged that it could be difficult to avoid exposure to pornography around friends at school. According to the state, that evidence permitted the court to find that youth had failed to prove by clear and convincing evidence that he was rehabilitated and did not pose a threat to the safety of the public.

Youth emphasized at oral argument that the state is relying on youth's pre-adjudication behavior, which his treatment was designed to address. In doing so, he acknowledges that ORS 163A.030(8) expressly contemplates that a juvenile court can consider pre-adjudication behavior in making the required finding regarding whether the youth is rehabilitated and not a threat to the safety of the public. But he argues that there must still be some nexus in the individual case between the factors relied upon and the question whether the youth is rehabilitated and presently poses a risk of committing sex offenses. We understand the state to have acknowledged that point at oral argument. As we explain below, we agree with youth's proposed construct—but we do not agree that it compels an outcome in his favor.

Although ORS 163A.030(7)(b) places the burden on the youth to prove by clear and convincing evidence that the youth "is rehabilitated and does not pose a threat to the safety of the public," a juvenile court's determination that a youth's "evidence is not sufficiently persuasive" is a "finding" that we review to determine whether there is evidence in the record to support it. *Johnson*, 335 Or at 523. And we have previously emphasized that, in our review of factual findings, the court has an "obligation to distinguish

between inferences that can be reasonably drawn from the evidence and inferences that are mere speculation." *State v. Hedgpeth*, 365 Or 724, 732, 452 P3d 948 (2019). That standard means that we will not automatically affirm a finding that a youth's evidence is unpersuasive simply because the record contains evidence that the youth had engaged in concerning sexual conduct prior to adjudication.

As emphasized, the inquiry under ORS 163A.030 (7)(b) focuses on the youth's current status, including all treatment to address the threat that the youth may once have presented. Thus, a youth's pre-adjudication conduct, alone, will support the court's finding only when there is a "nonspeculative connection" between that pre-adjudication conduct and the youth's status at the time of the hearing under ORS 163A.030. *See Hedgpeth*, 365 Or at 744 (concluding that the record lacked a "nonspeculative connection" between the defendant's blood alcohol content (BAC) at the time of the test and his BAC two hours earlier).

Following that same framing, youth contends that, on this record, there is no more than a speculative connection between his pre-adjudication conduct and his current status, and therefore that the only reasonable inference from this record is that he proved by clear and convincing evidence that he "is rehabilitated and does not pose a threat to the safety of the public." ORS 163A.030(7)(b). In support of that argument, youth highlights his "exemplary participation in treatment and state supervision, lack of reoffending, and assessment of low risk by his treatment provider."

But we need not decide whether youth's pre-adjudication conduct, alone, permits a nonspeculative inference that youth failed to prove that he is rehabilitated and not a threat to the safety of the public, because we conclude that the record otherwise permitted the juvenile court to find that it was not persuaded by youth's evidence. Although youth emphasizes that he completed sex offender treatment and that his counselor, Stanzione, had assessed youth's risk of reoffending as "low," Stanzione noted that he had determined youth's risk level through the ERASOR assessment tool. And he made a point of emphasizing in his discharge report that ERASOR has not been empirically validated

and that its administration relies on the "assumption that the client was being truthful at the time of the evaluation." Moreover, neither Stanzione's discharge report nor his letter to youth's attorney indicate that Stanzione independently endorsed youth's ERASOR prediction that he is a "low risk." Given those considerations, Stanzione's descriptions of youth's predicted risk did not require the juvenile court to find that it was highly probable youth is rehabilitated and no longer a threat to the safety of the public. We have no doubt that youth's evidence might have persuaded another factfinder, but that is not the only reasonable inference that can be drawn from this record. And the choice between multiple reasonable inferences was "a matter for the factfinder." *Aguirre-Rodriguez*, 367 Or at 623. Thus, accepting "reasonable inferences and reasonable credibility choices that the trial court could have made," *Botofan-Miller*, 365 Or at 505-06, we affirm the finding that youth failed to prove that it is highly probable that he is rehabilitated and not a threat to the safety of the public.[11]

## III.   CONCLUSION

We conclude that ORS 163A.030(7)(b) requires the juvenile court to make a factual finding as to whether the youth has proved by clear and convincing evidence that they are rehabilitated and do not pose a threat to the safety of the public, before ordering the youth to report as a sex offender. On this record, we further conclude that the juvenile court permissibly inferred that youth had not met that burden. Accordingly, we affirm that court's order requiring youth to report as a sex offender.

The decision of the Court of Appeals and the order of the circuit court are affirmed.

---

[11] Although the statutory process described under ORS 163A.030 allows only one opportunity for a youth to avoid the obligation to report as a sex offender altogether, we observe, as did the Court of Appeals, that ORS 163A.130 provides a separate process through which "[a] person required to report as a sex offender *** as a result of an adjudication in an Oregon juvenile court, may file a petition for an order relieving the person of the obligation to report." ORS 163A.130 (1)(a). And for a youth who committed acts which would constitute a Class C felony if committed by an adult, as here, that process is available as soon as "30 days before the termination of the juvenile court jurisdiction over [the youth]." ORS 163A.130(2)(b).