243 P.3d 488 (2010)
238 Or. App. 720
STATE of Oregon, Plaintiff-Respondent,
v.
Dale Duane INGRAM, Defendant-Appellant.
0701724CR; A139621.
Court of Appeals of Oregon.
Argued and Submitted August 26, 2010.
Decided November 17, 2010.
*489 Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.
Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Before LANDAU, Presiding Judge, and ORTEGA, Judge, and SERCOMBE, Judge.
ORTEGA, J.
Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010(4). He assigns error to the admission of evidence from a Horizontal Gaze Nystagmus (HGN) test, arguing that the state failed to establish the necessary foundation before admission of that scientific evidence. For the reasons stated below, we reverse and remand.
The following facts are undisputed. Oregon State Police Trooper Kevin Roach, with 19 years of DUII enforcement experience, stopped defendant for suspected DUII and performed a series of field sobriety tests. Roach administered the HGN test, which detects whether a person's eyes make involuntary jerking movements while following a horizontal visual stimulus. Roach made a video recording of the tests from his police vehicle and later, after reviewing the videotape, admitted at the hearing that he did not administer the HGN test consistently with his training and the "field sobriety test manual."[1]
*490 Roach testified that he made four horizontal passes (twice for each eye) instead of the required eight passes (four for each eye). Additionally, he was unsure if he held the stimulus the required distance of 12 to 15 inches from defendant's eyes and admitted that he passed the stimulus six to eight inches above defendant's eye level, contrary to instructions from his training to hold the stimulus "slightly above" defendant's eye level. Further, he admitted that he probably moved the stimulus back and forth at an improper speed. The manual emphasized that field sobriety tests are valid only when "administered in a prescribed, standardized manner. Standardized clues are used to assess the suspect's performance[, a]nd the standardized criteria are employed to interpret that performance. If any one of these standardized field sobriety tests elements is changed[,] the validity is compromised."
Roach observed that defendant's eyes jerked as they followed the stimulus, rather than being smooth, and that, when holding the stimulus at "maximum deviation" i.e., as far left and right as defendant's eyes would follow it, he observed a distinct and sustained horizontal nystagmus. Following the HGN test, Roach believed that defendant was under the influence of intoxicants. Defendant also had difficulty maintaining balance and following directions when Roach administered additional physical maneuver tests.
Roach acknowledged that the field sobriety tests are valid only if administered in the "prescribed, standardized manner." During the DUII jury trial, defendant moved to exclude the HGN test results on the ground that the state had failed to establish the necessary foundation to admit that scientific evidence. However, the court admitted the HGN evidence, allowing the jury to address any question of improper administration of the test in assessing the weight of that evidence. The jury convicted defendant of DUII.
On appeal, defendant reasserts his argument that the state failed to establish the foundational requirements for admission of the HGN test results. The state responds that Roach sufficiently followed the test protocol to establish the foundation for admission of scientific evidence, and that any error in admission of the test results was harmless in light of the other evidence that defendant was intoxicated.
The "HGN test evidence is `scientific' evidence." State v. O'Key, 321 Or. 285, 297, 899 P.2d 663 (1995). We evaluate whether the state established the "foundational showing that the officer who administered the test was properly qualified, the test was administered properly, and the test results were recorded accurately," in order to admit the scientific evidence as a valid indicator of impairment. Id. at 322-23, 899 P.2d 663. Scientific validity depends on the reliability of the methods and procedures used to produce the evidence. Id. at 301-02, 899 P.2d 663. "The validity of HGN evidence depends in part on the examining officer's ability to administer the test, to interpret the test results, and to relate accurately his or her perceptions." Id. at 318, 899 P.2d 663 (emphasis added).
Here, Roach admitted that he did not administer the test properly. He failed to make the required number of horizontal passes for each eye and moved the stimulus at an improper speed and at a higher level than his training and the test manual instructed him to do. Because he failed to follow the test protocol, the results he obtained were not scientifically valid; accordingly, the state failed to establish a foundation for admission of those results.
The state next urges that any error in admitting the HGN test results was harmless. The question we must answer in order to affirm despite the error is whether there is little likelihood that admission of that evidence affected the jury. State v. Davis, 336 Or. 19, 32, 77 P.3d 1111 (2003). However, the HGN evidence was qualitatively different from the other evidence of intoxication that *491 was presented to the jury and, as we have previously recognized, "[t]he potential for scientifically based evidence to exert influence on a jury is manifest." State v. Aman, 194 Or.App. 463, 474, 95 P.3d 244 (2004), rev. dismissed, 339 Or. 281, 120 P.3d 1224 (2005). Under those circumstances, we cannot say that there was little likelihood that admission of the HGN evidence affected the jury.
Reversed and remanded.
NOTES
[1] OAR XXX-XXX-XXXX(1)(a) provides:

"Horizontal Gaze Nystagmus: The police officer must have received training * * * [and] shall use a stimulus (such as a finger, pencil or penlight) held vertically in front of the person's face approximately 12 to 15 inches away from the person's face. The person tested must hold their head still. The officer, during the administration of the testing procedures, should conduct the testing procedures in the order listed unless circumstances or conditions dictate otherwise:
"(A) The officer shall move the stimulus from the center of the face to the side, checking for the lack of smooth pursuit of the eyes as they track the stimulus;
"(B) The officer shall check for distinct nystagmus at the maximum deviation of each eye;
"(C) The officer shall check for the onset of nystagmus prior to 45 degrees in each eye."
Roach also read from the "field sobriety test manual" used to train officers in HGN procedure, which provided additional step-by-step details on how to administer the test.