700 October 30, 2024 No. 763

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE ARTURO RODRIGUEZ-DELAO,
*Defendant-Appellant.*
Lane County Circuit Court
20CR45137, 21CR13314; A177874 (Control), A177875

Karrie K. McIntyre, Judge.

Submitted September 18, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

In Case Number 20CR45137, conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed. In Case Number 21CR13314, affirmed.

**POWERS, J.**

In this consolidated criminal appeal, defendant challenges his conviction for driving while under the influence of intoxicants (DUII), ORS 813.010(4), assigning error to the trial court's admission of evidence regarding his performance on the horizontal gaze nystagmus (HGN) test. Defendant argues that the trial court erred in overruling his objection to the admissibility of the evidence because the trooper who administered the test did not follow his training. The trooper acknowledged that there are medical or physiological conditions that can impact performance on the test, that he was trained to ask about those conditions before administering the test, that he did not do so, and that it was "a procedural mistake." Given that testimony about how he administered the test, we conclude that the state failed to lay an adequate foundation for the admission of the trooper's testimony about defendant's performance on the HGN test. Accordingly, the trial court erred in overruling defendant's objection to the admissibility of the evidence, and we conclude that the evidentiary error was not harmless. We, therefore, reverse defendant's DUII conviction and remand for further proceedings.

## I.  STANDARD OF REVIEW

We review the admission of scientific evidence for legal error. *State v. Beltran-Chavez*, 286 Or App 590, 610, 400 P3d 927 (2017). We review a trial court's evidentiary ruling in light of the record that was before the court at the time of its ruling. *State v. Eatinger*, 298 Or App 630, 632, 448 P3d 636 (2019). To evaluate whether the erroneous admission of evidence was harmless, we consider all pertinent parts of the record. *Id.* We begin by describing the undisputed background and procedural facts.

## II.  FACTUAL BACKGROUND

In August 2020, defendant's pickup truck collided with another vehicle at an intersection. Both drivers pulled over, and defendant provided the other driver with an expired insurance card that did not include his name. The other driver did not believe that defendant was under the

influence of alcohol and snapped a photograph of defendant's license plate and insurance card. Defendant left after about 10 minutes, before the police arrived.

Using the photograph of defendant's license plate number, Trooper Merritt ran a records check to obtain defendant's name and address. Merritt and Trooper Sweet proceeded to defendant's residence, where they spoke with him about an hour after the crash. According to Merritt, defendant seemed substantially impaired. Defendant told Merritt that he drank one or two beers after returning home from the accident. Based on his observations, Merritt believed that defendant had "substantially more than one beer."

Defendant agreed to participate in field sobriety tests (FSTs). Merritt administered the HGN test, the walk-and-turn test, and the one-leg-stand test. On the HGN test, Merritt observed six out of six possible clues of impairment.[1] On the walk-and-turn test, Merritt observed four out of eight possible clues, and, on the one-leg-stand test, he did not observe any clues. Based on the "totality of the results," Merritt believed that defendant had been under the influence of alcohol and impaired at the time of the crash. According to Merritt, "[e]ven if he did have that additional beer at home, I believe that wouldn't have *** [taken] him to the impairment level that I was observing."

Merritt arrested defendant for failure to perform the duties of a driver. At the jail, about three hours after the accident, a breath test indicated that defendant had a blood alcohol content (BAC) of 0.12 percent.

### III.   PROCEDURAL BACKGROUND

In Case No. 20CR45137, the state charged defendant with DUII, ORS 813.010(4) (Count 1), and failure to perform the duties of a driver when property is damaged, ORS 811.700 (Count 2). About seven months later, in Case

---

[1] The HGN test is designed to detect whether a person's eyes demonstrate nystagmus, which is an involuntary rapid movement of the eyeball. *State v. O'Key*, 321 Or 285, 294, 899 P2d 663 (1995). The test is premised on the proposition that the automatic tracking mechanisms of the eyes are affected by alcohol. *Id.* at 295.

No. 21CR13314, defendant was charged with driving while suspended or revoked, ORS 811.182(4).[2]

Defendant proceeded to a jury trial on the charges of DUII and failure to perform the duties of a driver. When Merritt began to testify about FSTs, defendant objected and argued that the state could not lay a foundation for the admission of the evidence because Merritt was trained to ask medical questions and he had not done so. The trial court excused the jury and considered arguments from counsel and testimony from the trooper about the HGN test and his training.

Defense counsel argued that, under *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995), "officers should ask for potential medical conditions that may mimic signs of alcohol and drug impairment," and Merritt failed to do so. The prosecutor responded that "the foundational requirements for the [HGN test] *** don't have anything to do with whether or not [Merritt] asked medical questions." According to the prosecutor, whether Merritt asked medical questions might be relevant to a defense based on a head injury, but it did not "negate the admissibility" of FSTs or the HGN test. That is, the prosecutor contended that the failure to ask the medical questions went to weight of the evidence, not admissibility of the evidence.

While the jury was excused, Merritt testified about the HGN test procedure, and he explained how he administered the test in this case. Merritt acknowledged that he was trained that there are medical or physiological conditions that can impact performance on the HGN test, that he was trained to ask about them, and that he did not do so. Merritt testified that he did not observe any injuries. As he explained it, "I had spoken to him enough that I felt [defendant] didn't have any concerning medical issues." Nevertheless, Merritt admitted that it was "a procedural mistake" not to ask questions about medical conditions before administering the HGN test.

---

[2] On appeal, defendant does not challenge his conviction on Count 2, failure to perform the duties of a driver, in Case No. 20CR45137. After he was found guilty of the charges in Case No. 20CR45137, defendant pleaded guilty to the charge in Case No. 21CR13314, and he also does not challenge that conviction on appeal.

Before ruling on whether the failure to ask medical questions impacted the foundation for the admission of HGN evidence, the trial court indicated that it intended to review *O'Key*. When trial resumed the following day, and outside the presence of the jury, the trial court ruled that the state had laid a foundation for the admission of HGN test evidence because Merritt testified "that he has been trained in the administration of the HGN, [and] that he followed his training in administering the HGN. I also had the opportunity in the pretrial hearing to actually view that administration of the test on the video in State's Exhibit Number 1."

The trial court also relied on *O'Key* and OAR 257-025-0020, which describes how the HGN test should be administered.[3] The trial court observed that the administrative rule does not mention medical questions, and that Merritt's failure to ask medical questions went to the weight of the evidence rather than its admissibility, which was a topic that defense counsel could explore on cross-examination.

When trial resumed before the jury, Merritt testified that in administering the HGN test, Merritt observed six out of six possible clues of impairment. Before the jury, Merritt testified, "If there's HGN present it's a high chance that there is impairment from an alcoholic substance." In response to questions from the prosecutor, Merritt indicated

---

[3] OAR 257-025-0020(1)(a) provides:

"Horizontal Gaze Nystagmus: The police officer must have received training in the administration of the Horizontal Gaze Nystagmus (HGN) test by the Oregon State Police, [the Board on Public Safety Standards and Training], or other governmental entity prior to its administration under this rule. The officer shall use a stimulus (such as a finger, pencil or penlight) held vertically in front of the person's face approximately 12 to 15 inches away from the person's face. The person tested must hold their head still. The officer, during the administration of the testing procedures, should conduct the testing procedures in the order listed unless circumstances or conditions dictate otherwise:

"(A) The officer shall move the stimulus from the center of the face to the side, checking for the lack of smooth pursuit of the eyes as they track the stimulus;

"(B) The officer shall check for distinct nystagmus at the maximum deviation of each eye;

"(C) The officer shall check for the onset of nystagmus prior to 45 degrees in each eye."

that the HGN test is "an accurate indicator" to help determine when someone is under the influence of alcohol. Merritt testified that observing four clues indicates possible impairment and he observed six. The jury watched body camera footage of defendant's performance on the FSTs, including his performance on the HGN test.

On cross-examination, Merritt testified that, "when I observed the video, I did notice I combined the equal tracking with the lack of smooth pursuit," and that he "missed one pass or didn't delineate one pass." As a result, Merritt acknowledged that he did not administer the test as trained. He also acknowledged that he is trained to ask about medical conditions before performing the HGN test and that he did not do so.

Ultimately, the jury found defendant guilty of DUII and failure to perform the duties of a driver. This timely appeal follows.

## IV.   ANALYSIS

In a single assignment of error, defendant argues that the trial court erred in determining that the state laid a foundation for admission of the HGN test evidence results and that the error was not harmless. The state remonstrates that the trial court did not err and that, in any event, the HGN testimony was harmless because the state also relied on defendant's BAC and other observable signs of impairment to prove defendant committed the crime of DUII. We conclude that the trial court erred in admitting the evidence and that the error was not harmless. Accordingly, we reverse and remand.

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." OEC 702. It is well established that HGN test evidence is scientific evidence because it "purports to draw its convincing force from a principle of science, namely, the asserted scientific proposition that there is a causal relationship between

consumption of alcohol and the type of nystagmus measured by the HGN test." *O'Key*, 321 Or at 296.

Typically, the admission of scientific evidence requires its proponent to lay a foundation to establish its scientific validity. *See generally State v. Brown*, 297 Or 404, 417, 687 P2d 751 (1984), and *O'Key*, 321 Or at 299-306. In *O'Key*, however, the Supreme Court held that the HGN test is scientifically valid and admissible in a DUII proceeding to establish that a defendant was under the influence of intoxicating liquor "subject to a foundational showing that the officer who administered the test was properly qualified, the test was administered properly, and the test results were recorded accurately[.]" 321 Or at 322-23. Thus, when the state relies on *O'Key* to establish the admissibility of HGN test results— as opposed to establishing the test's scientific validity—the state must lay the specific foundation required by *O'Key*.

In *State v. Ingram*, 238 Or App 720, 724, 243 P3d 488 (2010), we determined that the state failed to establish a foundation for admission of HGN test results because the trooper who administered the test "failed to make the required number of horizontal passes for each eye and moved the stimulus at an improper speed and at a higher level than his training and the test manual instructed him to do."

Similarly, here, we conclude the test was not properly administered because Merritt failed to ask questions about medical or physiological conditions, which he admitted was part of his training. The failure to ask those questions calls into question whether alcohol consumption caused the results Merritt observed on the HGN test. In *O'Key*, the Supreme Court explained the importance of asking those questions:

"Nearly anything that affects the inner ear labyrinth, including alcohol, will cause nystagmus. The evidence in the record shows that about three percent of the population suffers from non-alcohol-induced nystagmus and that, within that group, there are 50 to 100 causes of the phenomenon. Examples of causes of non-alcohol-induced nystagmus include caffeine, nicotine, eyestrain, motion sickness, epilepsy, streptococcus infections, measles, vertigo, muscular dystrophy, multiple sclerosis, influenza,

hypertension, sunstroke, changes in atmospheric pressure, and arteriosclerosis. Depressants and convulsants can cause HGN, and sleep loss can change the angle of onset by about five degrees. Non-alcohol-induced nystagmus, however, typically is asymmetrical (one eye only), whereas alcohol-induced nystagmus is the same in both eyes. Officers are trained to look for that aspect.

"To counter the foregoing concerns, part of the training that officers undergo instructs them to ask, before administering the HGN test, whether the person has a head injury, is ill, or is taking medication."

321 Or at 312-13 (citation omitted).

Perhaps drawing on the Supreme Court's characterization of questions about medical or physiological conditions as ones that must be asked before administering the HGN test, the state argues on appeal that "a failure to ask medical-screening questions before giving an HGN test does not mean that administration of the test—which requires an officer to track and record a defendant's eye movements—was somehow incorrect. At most, a failure to determine whether defendant had any medical conditions that might explain his performance on the test might have been pertinent to the weight that the jury should give the result. Such a failure did not, however, make the results inadmissible." (Emphasis omitted.) We are not persuaded.

The trooper's acknowledgment that he did not administer the test as he was trained is pivotal in this case. In *O'Key*, 321 Or at 322 n 46, the Supreme Court explained that defense counsel can attempt to persuade jurors to give little weight to HGN test evidence by showing "that there are numerous causes of nystagmus other than the use of alcohol. As with other [FSTs], the results of the HGN test may be attributable to physical and/or mental conditions other than the ingestion of alcohol." Certainly, then, defense counsel can rely on physical or mental conditions to challenge the weight of the evidence, but it does not follow that a failure to ask questions about those conditions in the first place is not relevant to whether there is a proper foundation for the admission of HGN evidence. Before admitting HGN evidence, the state must establish that the test was properly

administered. Given Merritt's testimony that asking questions about medical or physiological conditions was part of his training, and that it was a procedural mistake not to ask them, we conclude that the HGN test was not properly administered.

As the Supreme Court explained in *O'Key*, asking preliminary questions about medical or physiological conditions lessens the risk of false positives. *Id.* at 311. That is, asking those questions provides an opportunity to rule out—or at least account for—other factors that may be causing nystagmus, which makes it more likely that the HGN test results are a reliable, scientific indicator of alcohol impairment. Particularly in a case like this one, where the police were responding to a car accident, the failure to ask questions about medical or physiological conditions taints the test results. Accordingly, when there is an admitted failure to ask preliminary questions about medical or physiological conditions that are part of an officer's or trooper's training, then there has been a failure to properly administer the test, and the HGN test evidence is not admissible.[4]

In ruling that the evidence was admissible, the trial court determined that Merritt was qualified to administer the test and that he "followed his training in administering the HGN." The trial court appears to have implicitly ruled that asking preliminary questions about medical or physiological conditions is not part of the administration of the test, which instead consists of tracking and recording eye movements. The trial court also relied on OAR 257-025-0020(1)(a), which describes the HGN test, but does not mention medical questions. The record, however, reveals that Merritt expressly testified that he did not follow his training when he failed to ask medical questions and he acknowledged that it was a "procedural mistake." In our view, the failure to ask questions about medical or physiological conditions undermines the scientific validity of the HGN test

---

[4] Merritt suggested that he did not think that the failure to ask questions about medical or physiological conditions invalidated the HGN test results, but there is no information in the record to support a determination that Merritt was qualified to opine regarding the consequences of failing to follow his training. *Cf. State v. Brown*, 294 Or App 61, 62, 430 P3d 160 (2018) (holding that a police officer was not qualified to opine that a person who has nystagmus as a result of a brain injury will not exhibit all six clues on the HGN test).

results. Accordingly, the trial court should have ruled that the evidence of defendant's performance on the HGN test was not admissible for failure to offer a sufficient foundation. *See Ingram*, 238 Or App at 724 (concluding that when an officer fails to follow the test protocol, then the HGN test results are not scientifically valid).[5]

Having concluded that there was evidentiary error, we must consider whether that error was harmless. Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm a conviction despite an evidentiary error when there is little likelihood that admission of the evidence affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). The state argues that the error was harmless because it relied on defendant's BAC and other signs of impairment to prove its case beyond a reasonable doubt. We conclude that the error was not harmless. First, HGN test evidence is scientific evidence, which "has manifest potential to influence a jury." *Eatinger*, 298 Or App at 646. Second, like in *Eatinger*, whether defendant drove while impaired by alcohol was the central issue in this case. *See id.* at 645-46 (similarly concluding that an evidentiary error was not harmless when impairment was the central factual issue). Merritt told the jury, "If there's HGN present, it's a high chance that there is impairment from an alcoholic substance." Merritt testified that the test is an accurate indicator to help determine when someone is under the influence of alcohol, and that it is a "generally accepted method nationwide" for making that determination. Given the impact that testimony may have had on the jury, we cannot conclude that the evidentiary error was harmless.

The state also points out that it relied on defendant's BAC; however, in the state's rebuttal closing argument, the prosecutor argued, "We're not basing this entire trial off of the HGN and the Walk and Turn and the One Leg Stand. We're not basing the entire trial off of the blood alcohol content. We're basing this off of all the evidence you have in front of you." Given the state's reliance on all of the evidence,

---

[5] Having determined that the HGN test evidence was not admissible because Merritt failed to ask medical questions, we do not address defendant's unpreserved argument that Merritt failed to properly administer the HGN test by making fewer passes of the stimulus than he was trained to make.

including specifically referencing the improperly admitted evidence of defendant's performance on the HGN test, we cannot say that there was little likelihood that admission of that evidence affected the verdict, especially given the manifest potential for scientifically based evidence to exert influence on a jury. *See Ingram*, 238 Or App at 724 (concluding that the erroneous admission of HGN test results was not harmless given, among other reasons, the potential for scientifically based evidence to exert influence on a jury). We, therefore, reverse and remand defendant's DUII conviction.

In Case Number 20CR45137, conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed. In Case Number 21CR13314, affirmed.