134 March 19, 2025 No. 239

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of B. J. P. III,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

B. J. P. III,
*Appellant.*

Yamhill County Circuit Court
18JU04673; A180710

Jennifer K. Chapman, Judge.

Argued and submitted September 11, 2024.

Ginger Fitch argued the cause for appellant. Also on the brief was Youth, Rights & Justice.

Patricia G. Rincon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Hellman, Presiding Judge, Lagesen, Chief Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Affirmed.

## MOONEY, S. J.

Youth appeals a juvenile court order requiring him to report as a sex offender. He assigns error to the order itself and argues that the court applied an erroneous legal standard in assessing whether he met his burden to prove "by clear and convincing evidence that [he] is rehabilitated and does not pose a threat to the safety of the public," ORS 163A.030(7)(b), because the court did not focus on youth's current risk of sexual recidivism. Additionally, youth assigns error to the court's exclusion of (1) an article about juvenile sexual recidivism (the Caldwell article[1]), (2) an article about the effectiveness of specialized treatment programs for juvenile sex offenders (the Kettrey article[2]), and (3) youth's original treatment notebook. Youth argues that his expert relied upon the research articles in her direct and rebuttal testimony and that they were, thus, relevant to her credibility and conclusions. He argues that the original notebook was relevant because it would allow him to rebut allegations that he had forged certain initials in the notebook and that he provided incomplete copies of the notebook to his benefit. According to youth, exclusion of the relevant exhibits was reversible error.

The state does not dispute that the excluded exhibits are relevant. It argues instead that the exhibits were properly excluded as a discretionary sanction for discovery violations. Youth argues that the juvenile court abused its discretion when it excluded the exhibits because, under ORS 163A.030(9), the statutory hearing is designed to allow the juvenile court to "receive testimony, reports and other evidence, without regard to whether the evidence is admissible under" the rules of evidence if it is "related to the determination and findings required under" ORS 163A.030.

We conclude, for the reasons that follow, that the Caldwell and Kettrey articles, and the original treatment notebook, were relevant to the issues before the juvenile

---

[1] Michael F. Caldwell, *Quantifying the Decline in Juvenile Sexual Recidivism Rates*, 22(4) Psych, Pub Pol, & L 414 (2016).

[2] Heather Hensman Kettrey & Mark W. Lipsey, The Effects of Specialized Treatment on the Recidivism of Juvenile Sex Offenders: A Systematic Review and Meta-Analysis, 14 J Experimental Criminology 361 (2018).

court. However, we also conclude that the juvenile court did not abuse its discretion when it declined to receive those exhibits. With respect to the merits of the court's decision ordering youth to report as a sex offender, we conclude that the record did not require it to answer the factual question under ORS 163A.030 in a different way. We, therefore, affirm.

Youth asks us to conduct *de novo* review. ORS 19.415(3)(b) permits us, in our "sole discretion," to "try the cause anew upon the record or [to] make one or more factual findings anew upon the record." ORAP 5.40(8) describes the process by which *de novo* review may be requested, and it provides a nonexclusive and nonbinding list of items that we consider relevant to the decision whether to exercise our discretion to conduct *de novo* review, emphasizing that we exercise our discretion to conduct *de novo* review only in "exceptional cases."

We recently exercised our discretion to review the record *de novo* in two appeals of orders requiring sex offender reporting: *State v. X. E. W.*, 331 Or App 1, 2, 546 P3d 288 (2024) (exercising authority to review the record *de novo* "in order to apply the legal principles outlined in *State v. A. R. H.*, 371 Or 82, 530 P3d 897 (2023), which the Supreme Court issued after the parties submitted their briefs in this case") and *State v. K. L. F.*, 333 Or App 434, 435, 552 P3d 722 (2024) (exercising authority to review the record *de novo*, "[a]s we recently did" in *X. E. W.* because "the juvenile court applied an incorrect standard when assessing youth's risk of recidivism"). This case is similar to both *X. E. W.* and *K. L. F.* in that the juvenile court ruled on youth's petition for relief from sex offender requirements before *A. R. H.* was published. However, this case does not present the same concerns that were present in *X. E. W.* and *K. L. F.* about the trial court's application of the correct legal framework. Consequently, we do not exercise our discretion to review this case *de novo*.

We conduct our review of the juvenile court's order requiring youth to report as a sex offender in accordance with the usual standard of appellate review, recognizing that the juvenile court's assigned inquiry under ORS

163A.030(7)(b) is "a factual inquiry." *A. R. H.*, 371 Or at 84. We review the juvenile court's answer to that inquiry in the same way that we review factual findings in general: "We ask whether the evidence in the record, together with all reasonable, nonspeculative inferences that the factfinder could have drawn from the evidence, permitted the court's finding or, conversely, required a different finding." *Id.*

"[W]e review the trial court's conclusion that there was a discovery violation for legal error." *State v. Wesley*, 326 Or App 500, 512, 533 P3d 786, *rev den*, 371 Or 511 (2023). We are bound by the trial court's factual findings when supported by the record, and we review its choice of sanction for abuse of discretion. *Id.*; *State v. Lindquist*, 141 Or App 84, 89, 917 P2d 510 (1996) ("We review the trial court's choice of sanction under ORS 135.865 for abuse of discretion."). We review the juvenile court's exclusion of relevant evidence as duplicative for abuse of discretion. *See State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) ("A decision to exclude evidence under OEC 403 is reserved to the trial court's discretion."). We conduct our review of the juvenile court's evidentiary rulings "in light of the record that was before the court at the time of its ruling." *State v. Rodriguez-Delao*, 335 Or App 700, 701, 560 P3d 85 (2024).

We turn to the pertinent underlying historical and procedural facts. The state filed a delinquency petition against youth, then 16 years of age, alleging that when he was between the ages of 13 and 15, he had engaged in conduct with two younger cousins and a half-sister that, if done by an adult, would constitute eight felony sex crimes. The juvenile court accepted "*Alford* pleas" from youth on Counts 1 and 6, and an admission on Count 7.[3] It then determined

---

[3] Counts 1, 6, and 7 of the amended delinquency petition charged youth as follows:

"Count 1 Rape in the First Degree (ORS 163.375) (Class A Felony) The said youth, on, about, or between June 30th, 2015 to June 30th, 2017, in Yamhill County, Oregon, did unlawfully and knowingly engage in sexual intercourse with B.H.P., a child under twelve years of age, said act of youth being contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

"*****

"Count 6 Attempted Sexual Abuse in the First Degree (ORS 161.405) (ORS 163.427) (Class C Felony) The said youth, on, about, or between June 30th,

that youth was within the delinquency jurisdiction of the juvenile court.[4]

An *Alford* plea is a reference to *North Carolina v. Alford*, 400 US 25, 91 S Ct 160, 27 L Ed 2d 162 (1970). It is equivalent to a "no contest" plea under ORS 135.335(1) (c). Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 252, 149 (Nov 1972). As we recently explained:

> "'An *Alford* plea is a guilty plea in which the defendant does not admit commission of the criminal act or asserts that he is innocent.' *State v. Sullivan*, 197 Or App 26, 28 n 1, 104 P3d 636 (2005), *rev den*, 340 Or 673 (2006) (concluding that it was not plain error for a trial court to rely on an *Alford* plea as an admission of facts justifying a sentence enhancement). With an *Alford* plea, a defendant does not admit guilt 'but admits that sufficient evidence exists to convict him of the offense.' *United States v. Ramirez-Gonzalez*, 755 F3d 1267, 1273 (11th Cir 2014).
>
> "Before entering a judgment of conviction from a plea of guilty or no contest, the trial court must 'mak[e] such inquiry as may satisfy the court that there is a factual basis for the plea.' ORS 135.395. The '"factual basis for the plea" refers to facts concerning the defendant's guilt—*i.e.*, facts regarding whether the defendant committed the crime to which the defendant is pleading.' *State v. Heisser*, 232 Or App 320, 329, 222 P3d 719 (2009)."

*State v. Jackson*, 319 Or App 789, 791, 511 P3d 82 (2022). In proceeding with *Alford* pleas, youth chose not to contest that

---

2015 to June 30th, 2017, in Yamhill County, Oregon, did unlawfully and intentionally attempt by forcible compulsion to subject T.T., a child under fourteen years of age, to sexual contact, to wit: causing T.T. to touch said youth's penis, a sexual or intimate part of said youth, said act of youth being contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

"Count 7 Attempted Sexual Abuse in the First Degree (ORS 161.405) (ORS 163.427) (Class C Felony) The said youth, on, about, or between October 31st, 2015 to October 31st, 2017, in Yamhill County, Oregon, did unlawfully and intentionally attempt to subject G.C., a child under fourteen years of age, to sexual contact, to wit: touching G.C.'s breasts, a sexual or intimate part of G.C., said act of youth being contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

[4] Counts 2, 3, 4, 5, and 8 were dismissed by the juvenile court at the time of jurisdiction.

he engaged in intercourse with his 6-year-old half-sister and that he attempted to forcibly compel his 12-year-old cousin to touch his penis. We necessarily presume that the juvenile court determined that there was a factual basis for those charges when it took youth's *Alford* pleas.

The juvenile court placed youth on probation for five years with conditions that required him to, among other things, obey all laws, abstain from using or possessing controlled substances and alcohol, enter and complete sex-offender treatment, and not have contact with minor children.

Youth began treatment specifically designed for juvenile sexual offenders and he was "pretty solid" in that program for the first eighteen months. By all accounts, youth was "engaged" in all aspects of his probation, including treatment, during that initial time period. But youth's engagement with treatment fell off after he left his grandmother's home at age 18. He often missed scheduled therapy appointments and meetings with his probation officer. Youth submitted to various polygraph examinations, but the results were generally inconclusive, and at one point, he tested positive for marijuana and methamphetamine. Youth did not complete sex offender treatment. Consequently, the court found youth to be in violation of probation. It revoked his probation, sanctioned him with "time served," and effectively ended his period of supervision.

Youth sought relief from reporting as a sex offender pursuant to ORS 163A.030. The hearing began before one judge in June 2022, but it was discontinued and reset to begin before a second judge who conducted the hearing over the course of several days beginning in October 2022 and concluding in January 2023. Witnesses included youth, Dr. Crossen (licensed psychologist who completed an updated psychosexual evaluation concerning youth), Sean Clark (youth's therapist), and Rebecca Newmann (youth's probation officer).

Youth testified that he did not complete treatment, and he acknowledged that his failure to complete treatment resulted in the revocation of his probation. He testified that he had been given a chance to "re-enroll in [treatment]

services" but that he opted not to do so. Youth identified a set of photographs that he took of treatment workbook pages that he kept in a binder. He testified that the handwriting on those pages included that of his therapist, Clark, his probation officer, Newmann, his dad, and his own "chicken scratch." Clark or Newmann would initial the pages as youth completed the work. He testified that the treatment checklist at the back of the binder contained initials on all but the three items that he did not complete: "complete all of the assignments," "complete victim awareness assignment," and "complete clarification/apology letter." Youth testified that he did not write any letters to the victims. In particular, he testified that because he gave *Alford* pleas on two of the counts, a letter of apology or clarification would not "have fit [his] specific needs." He also did not send a letter to the victim in the count that he admitted.

Dr. Crossen testified that she completed youth's "updated psychosexual evaluation." Her report was received in evidence. The 30-page report details Crossen's findings and conclusions, and she testified about those findings at the hearing. In particular, Crossen concluded,

"Overall, [youth's] current estimate of sex offense recidivism is low, and therefore the public would not be offered any additional protection by requiring [youth] to register as a sex offender."

Crossen offered her opinion that although youth did not complete his treatment program, he "has a low need for interventions at this time." Indeed, Crossen testified that the sexual recidivism rate for juveniles is very low and that "the risk of re-offending is within the first three years after getting caught." Crossen testified that various studies address juvenile sexual recidivism rates, and that the Caldwell article in particular places that rate at 2.75 percent. Youth rested after Crossen's testimony, and the hearing was continued to a date approximately one month later.

When the hearing continued the next month, youth offered the Caldwell article into evidence. The state objected because youth had rested the month before and had not given it a copy of the article until the morning it was offered,

just as the state was about to present its evidence. The court ruled as follows:

> "It gets more awkward when we go into these non—these hearings without evidentiary rules, though, when the evidence code doesn't apply, it's harder—it's harder because most of this stuff needs to come in. But I really don't want to come back in 2025 and still be litigating this case, so the study itself is not going to come in except for purposes of an offer of proof, if we can keep the testimony about what this study says to ten to fifteen minutes, I will allow it. However, beyond—and I'm allowing it in part because I don't know that it's going to make a huge difference to the outcome of this case. Beyond that, though, [youth's counsel], if this is going to be, you know, an hour worth of testimony on this new issue, I don't think I can go there because I really don't want to be still here in three years."

The state then called its witnesses, Clark and Newmann. Newmann testified that, other than the conduct to which youth admitted at the time of jurisdiction, she was "aware of no hands-on sexual offenses by [youth]." She further testified that youth struggled with the "accountability" part of the treatment program, at least in part, because he had not admitted to the underlying conduct. Clark and Newmann both confirmed that youth had not completed treatment and that, because of that, his probation had been revoked.

The parties agree that the purpose of the hearing in question was to determine whether youth, who had been adjudicated for felony sex crimes as a juvenile offender, would be required to report as a sex offender under ORS 163A.030. ORS 163A.030(1) provides, as pertinent:

> "[T]he juvenile court shall hold a hearing on the issue of reporting as a sex offender by a person who has been found to be within the jurisdiction of the juvenile court under ORS 419C.005 *** for having committed an act that if committed by an adult would constitute a felony sex crime[.]"

The statute describes the various procedural and evidentiary requirements for such hearings and, in particular, ORS 163A.030(7)(b) describes the burden of proof as follows:

"The person who is the subject of the hearing has the burden of proving by clear and convincing evidence that the person is rehabilitated and does not pose a threat to the safety of the public. If the court finds that the person has not met the burden of proof, the court shall enter an order requiring the person to report as a sex offender under ORS 163A.025."

As the Supreme Court explained,

"whether a youth must report as a sex offender under ORS 163A.030 depends on a factual inquiry. The youth bears the burden to prove that it is highly probable that they have undergone a process of rehabilitation and do not present a risk of committing future sex offenses. * * * [T]he juvenile court may order the youth to report as a sex offender only when it finds that those asserted facts are not highly probable."

*A. R. H.*, 371 Or at 95. "[A] youth's pre-adjudication conduct alone will not necessarily permit a finding that the youth has failed to prove * * * that the youth is rehabilitated and not a threat to the safety of the public." *Id.* at 88.

ORS 163A.030(9) establishes relevance as the standard for admitting evidence in hearings to determine whether a youth must report as a sex offender:

"* * * [T]he juvenile court may receive testimony, reports and other evidence, without regard to whether the evidence is admissible under [OEC 100] to [OEC 412] and [OEC 601] to [OEC 1008], if the evidence is relevant evidence related to the determination and findings required under this section. As used in this subsection, 'relevant evidence' has the meaning given that term in [OEC 401]."

That relatively low evidentiary bar is consistent with the procedural flexibility built into delinquency hearings, and the well-settled principles that juvenile proceedings are not criminal trials, *State v. R. J. S.*, 318 Or App 351, 354, 506 P3d 1151, *rev den*, 370 Or 211 (2022), and delinquency adjudications are not criminal convictions, ORS 419C.400(5). Importantly, though, ORS 163A.030(9) describes what the juvenile court "may" receive; it does not describe what must be received.

As an initial matter, to the extent that youth argues on appeal that he had no discovery obligation to disclose the exhibits at issue before the start of the hearing, that argument is not preserved, and it is not plain or obvious that it is correct. We assume, for current purposes, that a hearing under ORS 163A.030 to determine whether an adjudicated youth must report as a sex offender is a stage in a proceeding within the juvenile court's exclusive delinquency jurisdiction under ORS 419C.005. That means that ORS 419C.270 applies to the proceeding except to the extent the specific provisions of ORS 163A.030 indicate otherwise. And while ORS 163A.030(9) makes many of the provisions of the Oregon Evidence Code inapplicable to those hearings, certain criminal procedures nevertheless apply in delinquency proceedings, and ORS 163A.030 does not speak to the issue of discovery but ORS 419C.270 does. Among other things, ORS 419C.270(6) applies ORS 135.835, ORS 135.845, and ORS 135.865 to delinquency proceedings.

ORS 135.835(3) requires the defendant to "disclose to" the prosecuting attorney "[a]ny books, papers, documents, photographs or tangible objects that the defense intends to offer in evidence at the trial" that are "within the possession or control of the defense." ORS 135.845 makes those obligations of disclosure time sensitive, requiring that disclosure occur "as soon as practicable following the filing" of the charging instrument, and subjecting the parties to ongoing duties of disclosure for additional materials that "a party finds, either before or during trial[.]" ORS 135.865 provides the trial court with sanctions that it may impose for discovery violations including ordering "the violating party to permit inspection of the material, or grant[ing] a continuance, or refus[ing] to permit the witness to testify, or refus[ing] to receive in evidence the material not disclosed, or enter[ing] such other order as it considers appropriate." Thus, because youth did not preserve the issue and because, as we have explained, it is not obvious that youth is correct that no statutory discovery obligations apply in a hearing under ORS 163A.030, we assume, without deciding, that ORS 419C.270(6), which governs discovery obligations in delinquency cases, applies to hearings under ORS 163A.030, which does not address discovery obligations,

because doing so allows us to give effect to both statutes.[5] *See Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008) ("[I]f the court can give full effect to both statutes, it will do so, and if not, it will treat the specific statute as an exception to the general.").

Youth argues that the Caldwell article, Exhibit 110, was relevant to the key issues of his rehabilitation and whether he poses a threat to the safety of the public. "The crux" of the Caldwell article, according to youth, was that it identified the rate of sexual recidivism in individuals like youth. The article is clearly relevant, but the state does not dispute that, and the juvenile court did not exclude the Caldwell article on relevance grounds. It ultimately excluded the article after this discussion with counsel:

> "[PROSECUTOR]: So, Your Honor, this was just provided to me this morning, the testimony was last month, I haven't had a chance to read it, Dr. Crossen testified about it, given that it's essentially late discovery, there was testimony from the Defense expert in relation to that, I would object to just the study being entered into the record due to the discovery I guess late violation as well as Dr. Crossen's already testified to what she wanted in relation to that and the State would not have time to prepare or to look at any contradicting studies or be able to have a conversation with anybody related to that study.

> "THE COURT: [Counsel for youth]?

> "[YOUTH'S COUNSEL]: *** [C]ounsel[] had the opportunity to cross-examine Dr. Crossen, also this study she referred to *** has to do with the very decision that Your Honor is making, which is the recidivism rate generally and then the fact that my client fits within that category of adolescents, so I would think that under the

---

[5] We acknowledge that ORS 135.835 and ORS 135.845 refer to "the filing of an indictment or information," "the defense," and "the trial." But ORS 419C.270(6) makes those provisions applicable to delinquency proceedings under ORS 419C.005, and given that, we assume that those terms must be read to make sense in that context as references, respectively, to delinquency petitions, youth, and fact-finding hearings. We likewise read those provisions to make sense in the context of delinquency hearings under ORS 163A.030 as references to petitions for relief from reporting requirements, youth, and the fact-finding hearing required by ORS 163A.030. As noted, youth did not preserve any argument that there is no statutory discovery process that applies to ORS 163A.030 hearings. That issue is not before us and we do not decide it.

very loose rule of evidence in a disposition-type hearing in juvenile that anything that would be useful to the Court to have these * * * would certainly fall within that category of relevance.

"THE COURT:   I'm going to go ahead and receive the exhibit, but if you want to cross-examine Dr. Crossen additionally, [prosecutor], if you want some additional time—

"[PROSECUTOR]:   And so Your Honor is essentially saying, hey, you know, we're—this is day five of this hearing, Dr. Crossen at the first hearing testified to that study, it wasn't provided to the State, so now we're here on month 11, I think, and we're getting brand new discovery from the Defense, so I can't possibly make a decision of potentially need[ing] more time when we have victims who have been waiting for this determination as well as I'm sure [youth] as well and we're getting new stuff from the Defense, which is the State like—

"THE COURT:   Why wasn't it given to [the prosecutor] earlier?

"[YOUTH'S COUNSEL]:   I just, I asked Dr. Crossen for it because she talked about it repeatedly because I wanted to read it, so I looked at it and I thought it would be useful, I just didn't prepare it for today, so it's not something that, you know, I thought about other than, as I said, I'm just saying I think it's highly relevant to the decision Your Honor's making, it's just, you know, it is being provided to the Court today, so—

"[PROSECUTOR]:   And so, Your Honor, that study is referenced in Dr. Crossen's report from I believe April, so that's when [youth's counsel] would have learned of it and would have had the opportunity to do that, we were here in June, we talked about it then, I just, I think it's manifestly unfair to the State to come in on this—on a bifurcated hearing to have, hey, here's new information that you previously didn't have that I'm going to submit as an exhibit without giving you the opportunity to review or be able to address it in any capacity. There I have to feel like there has to be some limit on—

"THE COURT:   Yeah, and you're right—

"[PROSECUTOR]:   —on when the Defense and just history on this case, Your Honor, when we were in front of

[a different judge], on day two of that hearing the Defense provided the State with what has been admitted as treatment notes, so this is something that's been habitual in this case, I'm afraid if we set this over again the Defense will provide additional exhibits and additional materials every single time we come back—

"THE COURT:   The last thing I want to do is set this over again, I will not, I will change my mind on that, I will not receive the exhibit[.]"

The parties characterize the trial court's decision to exclude the Caldwell article as a discovery sanction, but they disagree about whether it was a proper exercise of the court's discretion.

We agree that the juvenile court excluded the Caldwell article as a discovery violation sanction. As we already explained, youth had an obligation to disclose any tangible exhibits that he planned to offer at the hearing, and that obligation was ongoing as to "additional material or information" that he became aware of as the hearing proceeded. The obligation is time-sensitive, requiring prompt notice of any new material. The disclosure obligation is triggered when a party can "reasonably predict" that he will introduce the evidence. *See State v. Young*, 94 Or App 683, 689, 767 P2d 90 (1989).

Youth is correct that, under OEC 705, an expert may testify to their opinion "and give reasons therefor without prior disclosure of the underlying facts or data." However, and as happened here, "[t]he expert may in any event be required to disclose the underlying facts or data on cross-examination." OEC 705. Once youth became aware of the Caldwell article through Crossen's testimony and decided to offer it as an exhibit, he had a duty to promptly notify the state of his intent to do so. Given that youth had finished presenting his case-in-chief and had rested without offering the Caldwell article into evidence, it was not error for the juvenile court to conclude that he violated his ongoing discovery obligation by not notifying the state that he intended to offer the article as an exhibit. Indeed, youth waited for the state to begin presenting its evidence, a month later, and then offered the exhibit with no notice at all.

The sanctions available to the juvenile court under ORS 135.865 ranged from granting a continuance to excluding the Caldwell article. It is apparent that the court considered a continuance but determined that exclusion was more appropriate under the circumstances. We cannot say that the court abused its discretion, especially given the length of time that had passed since youth filed his petition, and Crossen's extensive testimony about the Caldwell article.

Youth offered the Kettrey article, Exhibit 112, which addresses whether individuals like youth must complete treatment to "fall into the low recidivism category," during his rebuttal case when he recalled Crossen. Again, the state does not dispute the relevance of the Kettrey article. After hearing from the parties, the juvenile court stated that if it were to "continue to receive new exhibits every single [day] *** we will never get this hearing *** done." The court later clarified that it would allow Crossen to testify about whether completing a treatment program impacts recidivism, but that the Kettrey article itself would be excluded. We conclude that the juvenile court did not abuse its discretion in excluding the Kettrey article for the same reasons it did not abuse its discretion in excluding the Caldwell article.

Youth offered a binder of the original workbook pages from his sex offender treatment program as Exhibit 111 when he presented his rebuttal case. But youth had, in his case-in-chief, already successfully offered Exhibit 109, which consisted of photographs that he testified he had taken of the pages in his treatment workbook that he had kept in a binder. When questioned about Exhibit 109 on cross-examination, youth testified that he thought Exhibit 109 was a complete copy of his notebook but, when pressed about that, he indicated that he was not certain. His therapist, Clark, later testified that a treatment checklist included in youth's Exhibit 109 looked "odd" to him because, among other reasons, it was "pretty much completely signed off" even though he would not typically sign off on such a list until the end of treatment, which youth did not complete.

Youth offered Exhibit 111 to rebut the suggestion that he had "forged" the treatment checklist. In particular, he offered Exhibit 111 as "relevant for Your Honor to

see some other original initialings also in the notebook done by Mr. Clark." The primary focus of the state's cross-examination of youth about Exhibit 109 was on the checklist. The juvenile court separated the original checklist from the proffered exhibit and received it as Exhibit 113, ruling:

> "I am going to receive the original of the treatment checklist, I'm not going to receive the originals of anything else *** that's duplicative."

The juvenile court, as trier of fact, heard the testimony of youth and Clark concerning the treatment binder, and it had received Exhibits 109 and 113, showing photographs of the workbook and the original treatment checklist. Therefore, the juvenile court received the original checklist that was at issue during youth's cross-examination, permitting it to assess the document's authenticity, and it otherwise excluded the portions of the notebook that were duplicative of the photographs provided in Exhibit 109. Even if, for the purpose of argument only, it was error for the court to exclude the rest of Exhibit 111, the evidence excluded was "merely cumulative of admitted evidence" and therefore, its exclusion was harmless. *State v. Jasperse*, 310 Or App 703, 711, 487 P3d 402, *rev den*, 368 Or 787 (2021) (internal quotation marks omitted).

Turning, finally, to the juvenile court's conclusion that youth failed to meet his burden under ORS 163A.030 and that he must, therefore, report as a sex offender, the court explained its ruling from the bench as follows:

> "On this record, the alleged acts, two of the counts of which he took Alford pleas, one of the counts which he admitted, they're fairly serious alleged offenses, we have multiple victims, two of whom have significant age gap, at least at the time, between themselves and [youth]. And on this record I feel like I have more questions than answers. I have questions about the youth's credibility, I have questions about what really happened to the victims, I have questions about why the youth didn't complete treatment, I have questions about why the youth didn't at least complete the empathy assignments, the clarification assignments as to the victim that he admitted, I have questions about why the youth seems to minimize what happened even to the victim that he acknowledges, I have questions about why

the youth wasn't able to better articulate things that he learned in treatment.

"I think given those questions and I think given the static factors, I think as [youth's counsel] has typically described them in other cases, it does pain me, but I find that the youth has not proven by clear and convincing evidence that he is rehabilitated and does not pose a safety threat to the public[.]"

In its written order, the juvenile court found that "youth has not proven, by clear and convincing evidence, that he or she is rehabilitated and does not pose a safety threat to the public."

We acknowledge that, when making its oral ruling, the court stated its findings in terms of "questions" that it had about the nature of the underlying juvenile offenses, youth's present day credibility, why youth continued to minimize the effect of his offenses on the victims, why he did not complete treatment—in particular his failure to complete the empathy and clarification assignments—and why youth could not articulate what he had learned in treatment. By noting the many questions it had at the conclusion of the hearing, we understand the juvenile court to have been explaining the weaknesses it found in youth's case and connecting those weaknesses to youth's current risk of sexual recidivism. In its explanation, the court relied on risk factors that included youth's recent failure to complete treatment, which included, in part, his ongoing refusal to work with the victims *vis-à-vis* clarification and empathy assignments. The fact that youth entered *Alford* pleas to two of the charged offenses does not explain or excuse his present-day refusal to complete treatment, and it did not require the juvenile court to ignore his treatment deficiencies. First, youth failed to complete the clarification and empathy assignments even with respect to the victim of the offense to which he offered his outright admission. And second, youth's decision not to contest two of the charges and to necessarily accept being adjudicated on those charges does not explain his refusal to complete treatment, his resulting violation of probation, or his decision to opt out of treatment even when it was again offered to him. Also, the juvenile court was free to accept or reject the expert testimony it heard about sexual recidivism

rates and treatment. *See Kotler and Winnett*, 282 Or App 584, 598, 385 P3d 1200 (2016) (explaining that a witness's "testimony was not entitled to greater weight simply because [the witness] is an expert; as with all conflicting evidence, the probative value of such evidence is solely for the trial court to determine"). Given all that, we cannot say that the record compelled the court to conclude other than it did.

Affirmed.